William T. MARSH, Appellant,

v.

Juanita Jacobs MARSH, Appellee.

No. 14–95–01471–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 27, 1997.

Rehearing Overruled July 10, 1997.

Richard A. Tindall, Deborah Heaton McElvaney, Houston, for appellant.

Ray Epps, Houston, for appellee.

Before MURPHY, C.J., and ANDERSON and O'NEILL, JJ.

## OPINION

ANDERSON, Justice.

In this appeal, we must determine whether the parties' premarital agreement is unconscionable as a matter of law. The trial court found that it was not, enforced the agreement, and ordered that appellant, William T. Marsh ("Bill"), is indebted to appellee, Juanita Jacobs Marsh ("Juanita") in the amount of $867,778, plus pre- and post-judgment interest and attorney's fees. In seventeen points of error Bill argues that the agreement is unenforceable because it is unconscionable, the trial court incorrectly calculated prejudgment interest and erroneously excluded evidence.[1] We affirm.

Bill and Juanita were married on March 19, 1991. At the time of the marriage, Bill was 78 and Juanita was 58. Both had been married previously. Juanita was reluctant to agree to marry because of the financial losses she incurred from the long illness and decline of her deceased husband. She agreed to marry Bill on the condition that he would provide for her financially.

On the morning before their evening marriage, Bill and Juanita executed an "Agreement in Consideration of Marriage" ("the premarital agreement"), a Trust Agreement, and a Release. The documents were prepared by Juanita's attorney, Robert Jarrard, and Bill was not represented by counsel. According to the premarital agreement, as consideration for Juanita's agreement to marry him, Bill agreed to pay to Juanita, as her separate property, one-half of his assets, which included several accounts in his name at Legg Mason Wood Walker, Inc. ("Legg Mason"). The assets were to be transferred to the Juanita Jacobs Trust ("the Trust") within thirty days of the marriage. The Trust Agreement provides that Juanita is the trustee and sole beneficiary of the corpus of the Trust. Bill and Juanita are equal income beneficiaries of the Trust, as long as both are

---

1. Before submission, Bill withdrew points of error eleven through thirteen concerning attorney's fees, conceding that Juanita complied with the requirements set forth in the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC & REM CODE ANN. § 38.002 (Vernon 1986).

living. The Trust terminates at Bill's death and the corpus is to be distributed to Juanita. The Release recites that Bill was "strongly requested to obtain counsel," but he elected not to do so. The Release further states that each party fully understood the terms of the premarital agreement, each entered it freely and with informed consent, and it was not procured by fraud, duress or overreaching.

After their marriage, Bill paid approximately $189,000 into the Trust, but thereafter refused to make further payments. Juanita filed suit to enforce the agreement.[2] Bill answered, claiming the agreement is unconscionable, he did not receive adequate disclosure of Juanita's assets, he had no way to acquire adequate knowledge of the property or financial obligations of Juanita, and did not waive this right. Alternatively, he claimed the agreement was achieved through fraud, duress, or overreaching, or that his performance was excused because of a failure of a predicate to his performance. He also counterclaimed, seeking return of the funds paid to the Trust. The trial court entered temporary orders which required Bill to maintain a minimum balance of $1,200,000 in his Legg Mason account through final hearing. The case was tried to the court, which ruled in favor of Juanita and incorporated its ruling in a written judgment dated August 15, 1995. The trial court entered a Supersedeas Order requiring Legg Mason to hold $1,282,249 in escrow to secure the judgment. On September 14, 1995, Bill filed a motion for new trial, which was overruled by operation of law. The trial court filed findings of fact and conclusions of law.[3]

## I. Enforceability

Effective September 1, 1987, Texas adopted the Uniform Premarital Agreement Act, which is codified in Chapter 5 of the Texas Family Code. Section 5.46 of the Family Code, which governs the enforcement of premarital agreements, provides as follows:

(a) A premarital agreement is not enforceable if the party against whom enforcement is sought proves that:

(1) that party did not execute the agreement voluntarily; or

(2) the agreement was unconscionable when it was executed and, before execution of the agreement, that party:

(A) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

(B) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

(C) did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.

(b) An issue of unconscionability of a premarital agreement shall be decided by the court as a matter of law.

(c) The remedies and defenses in this section are the exclusive remedies or defenses, including common law remedies or defenses.

TEX.FAM.CODE ANN. § 5.46 (Vernon 1993 & Supp.1997). Juanita agrees that subsection (c), which was added by 1993 amendment, applies only to an agreement executed on or after September 1, 1993. An agreement executed before that date is governed by the law in effect at the time the agreement was executed. Act effective September 1, 1993, 73rd Leg., R.S., ch. 136, § 3, 1993 Tex.Gen. Laws 283. Therefore, Juanita concedes the premarital agreement is subject to common law defenses, in addition to those provided in section 5.46.

Bill has not raised the issue of voluntariness on appeal. Instead, he contends the agreement is unconscionable as a matter of law. In his points of error one, two, five, six and seven, Bill attacks the trial court's find-

2. At the time of trial, the parties were still married although they were separated. When the cause was submitted to this court, neither party had filed for divorce.

3. Although Bill requested findings of fact and conclusions of law timely, the trial court did not file them until October 31, 1995. Bill has not raised a point of error on appeal complaining about the late filing, however.

ings and conclusions which impliedly determined the agreement was not unconscionable. Specifically, the trial court determined in conclusion of law no. 2 that the premarital agreement is a valid and enforceable agreement pursuant to the Texas Family Code.

## A. Standard of Review

We review the trial court's findings of fact by the same standards we use to review a jury's findings. *Zieben v. Platt*, 786 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1990, no writ). It was Bill's burden to establish that the premarital agreement was unenforceable. TEX.FAM.CODE ANN. § 5.46(a) (Vernon 1993). When an appellant attacks the legal sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). When reviewing a "matter of law" point, we apply a two-prong test: (1) we examine the record for any evidence that supports the finding, ignoring all evidence to the contrary; (2) if there is no evidence to support the finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* If the contrary proposition is established conclusively, we sustain the point. *Meyerland Community Improvement Ass'n v. Temple*, 700 S.W.2d 263, 267 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

When reviewing a challenge to the factual sufficiency of the evidence, we must examine all of the evidence in the record, both supporting and contrary to the judgment. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). After considering and weighing all the evidence, we will sustain the challenge only if the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Our standard of review of the trial court's legal conclusions is to determine their correctness. *Zieben*, 786 S.W.2d at 801–02. Conclusions of law are always reviewable on appeal. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.]), *writ ref'd n.r.e. per curiam*, 699 S.W.2d 199 (Tex.1985). The issue of unconscionability is a question of law for the court. TEX.FAM.CODE ANN. § 5.46(b) (Vernon 1993). We review questions of law *de novo*, without deference to the lower court's conclusions. *State v. Heal*, 917 S.W.2d 6, 9 (Tex.1996); *Hull & Co., Inc. v. Chandler*, 889 S.W.2d 513, 517 (Tex.App.—Houston [14th Dist.] 1994, writ denied). As an appellate court, we have a duty to independently evaluate the trial court's findings on matters of law. *Daniel v. Daniel*, 779 S.W.2d 110, 114 (Tex.App.—Houston [1st Dist.] 1989, no writ). We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Kotis v. Nowlin Jewelry, Inc.*, 844 S.W.2d 920, 922 (Tex. App.—Houston [14th Dist.] 1992, no writ).

## B. Unconscionability

The legislature and people of Texas have made a public policy determination that premarital agreements should be enforced. *Beck v. Beck*, 814 S.W.2d 745, 749 (Tex.1991). Therefore, premarital agreements are presumptively enforceable. *Grossman v. Grossman*, 799 S.W.2d 511, 513 (Tex.App.—Corpus Christi 1990, no writ). According to the statute, Bill, as the party opposing enforcement, bore the burden of proof to rebut the presumption of validity and establish the premarital agreement is not enforceable. *Id.;* TEX.FAM.CODE ANN. § 5.46(a) (Vernon 1993).

However, neither the legislature nor Texas courts have defined "unconscionable" in the context of marital or premarital property agreements. Instead, Texas courts have addressed the issue of unconscionability on a case-by-case basis, looking to the entire atmosphere in which the agreement was made. *Pearce v. Pearce*, 824 S.W.2d 195, 199 (Tex.App.—El Paso 1991, writ denied).[4] In

---

4. Most reported Texas cases discussing enforcement of marital property agreements deal with those entered during marriage, rather than before. *See, e.g., Blonstein v. Blonstein*, 831 S.W.2d 468 (Tex.App.—Houston [14th Dist.]), *writ denied per curiam*, 848 S.W.2d 82 (Tex. 1992). The statutory defenses for premarital and postmarital agreements are identical, making

the absence of clear guidance as to the definition of "unconscionability" in marital property cases, courts have turned to the commercial context. For example, the following general discussion of unconscionability, taken from a case involving a suit on a real estate listing agreement, is sometimes cited:

> In determining whether a contract is unconscionable or not, the court must look to the entire atmosphere in which the agreement was made, the alternatives, if any, which were available to the parties at the time of the making of the contract; the non-bargaining ability of one party; whether the contract is illegal or against public policy, and, whether the contract is oppressive or unreasonable. At the same time, a party who knowingly enters a lawful but improvident contract is not entitled to protection by the courts. In the absence of any mistake, fraud, or oppression, the courts, as such, are not interested in the wisdom or impolicy of contracts and agreements voluntarily entered into between parties compos mentis and sui juris. Such parties to contracts have the right to insert any stipulations that may be agreed to, provided they are neither unconscionable nor otherwise illegal or contrary to public policy. It has accordingly been said that, almost without limitation, what the parties agree upon is valid, the parties are bound by the agreement they have made, and the fact that a bargain is a hard one does not entitle a party to be relieved therefrom if he assumed it fairly and voluntarily. A contract is not unenforceable on the ground that it yields a return disproportionate to the expenditures in time and money, where there has been no mistake or unfairness and the party against whom it is sought to be enforced has received and enjoyed the benefits.

*Wade v. Austin,* 524 S.W.2d 79, 86 (Tex.Civ. App.—Texarkana 1975, no writ) (citation omitted).

■ In our review of the evidence, we first consider the evidence supporting the trial court's conclusion that the agreement is not unconscionable.

Both the premarital agreement and the Release expressly state that each party entered the agreement freely and knowingly. Bill testified that there were no threats, fraud, overreaching, duress, or misrepresentations made to him to induce him to execute the agreement. He also acknowledged that he was free to consult an attorney and accountant before its execution. There was no evidence presented that Juanita took advantage of Bill. There was no evidence that Bill was senile, and he denied that he was. He was active in trading stocks. A letter Bill wrote to Legg Mason requesting specific transfers to the Trust from one of his accounts showed Bill appeared to be well aware of what he owned.

Juanita testified that Bill agreed to the transfer of one-half of his Legg Mason accounts to the Trust. She denied ever seeing the Legg Mason documents before they were attached to the agreements. She also stated she "thinks" Bill read the agreement before signing it. Juanita testified she never threatened or dominated Bill, and that the agreement was not procured through fraud or duress.

Jarrard, the attorney who prepared the agreement, testified that Bill provided all the financial documents needed to draft the premarital agreement, and that he dictated portions of the agreement. Specifically, Bill requested that he be a lifetime beneficiary of one-half of the income from the Trust. This provision was incorporated in the Trust. Jarrard also testified that he met with both parties over several hours in discussing the proposed agreement, including three visits with Bill alone. Jarrard stated he discussed the gift tax consequences with Bill, and Bill offered to have his accountant prepare any required tax return. Jarrard further testified he believed the parties were provided a copy of the documents to review before they were executed and he was sure that Bill

these cases instructive as to the issues before us. However, in post-marital agreements a fiduciary duty exists that is not present in premarital agreements between prospective spouses. *See Daniel,* 779 S.W.2d at 115 (recognizing the confidential relationship between a husband and wife imposes the same duties of good faith and fair dealing on spouses as required of partners and other fiduciaries).

understood the documents. Jarrard testified he "strongly" recommended Bill obtain counsel[5] Bill admitted Jarrard encouraged him to see a lawyer, but contends that he was not emphatic.

Clearly, there is some evidence supporting the factual basis for the trial court's conclusion that the agreement is not unconscionable. Therefore, we now consider all the remaining evidence in the record to evaluate whether the trial court's determination is against the great weight and preponderance of the evidence.

In reviewing the validity of a marital property agreement, this court has considered such factors as the maturity of the individuals, their business backgrounds, their educational levels, their experiences in prior marriages, their respective ages and their motivations to protect their respective children. *See Williams v. Williams,* 720 S.W.2d 246, 249 (Tex.App.—Houston [14th Dist.] 1986, no writ). Bill argues, however, that he established the following factors which make the agreement in this case unconscionable:

(1) the onerous circumstances of its execution, including:

(a) the parties' disparate bargaining power;

(b) the agreement's proximity in time to the marriage;

(c) the absence of counsel representing Bill's interests;

(2) the oppressive, one-sided nature of the agreement; and

(3) the failure of the agreement to effect the parties' intent.

Our review of the entire record does not reveal that the evidence overwhelmingly established these factors. We disagree that the parties had disparate bargaining power. Both were mature, educated, and had business experience. Juanita had grown children to consider, and Bill was childless. Both Bill and Juanita had been married before, and Juanita had seen her assets diminished through the lengthy illness of her late husband. Only Juanita had previously executed a premarital agreement, however.

The fact that the premarital agreement was signed shortly before the wedding does not make the agreement unconscionable. *See Williams,* 720 S.W.2d at 248–49 (holding that an agreement signed on the day of marriage was not procured through fraud, duress or overreaching because the wife had substantial business experience and the husband testified they had discussed the agreement's terms six months before the wedding). Likewise, the fact that Bill was not represented by independent counsel is not dispositive. *See Pearce,* 824 S.W.2d at 199 (enforcing a postmarital agreement where the wife testified she was not represented by counsel and did not read or understand the agreement, yet she encouraged her daughter-in-law to sign a similar agreement against the daughter-in-law's attorney's advice). Moreover, Bill consulted his long-time attorney, James Baker, shortly after his marriage and admitted that Baker pointed out several problems with the agreement. Juanita testified Bill told her the agreement was worthless. Contrary to his attorney's advice, Bill requested transfers of approximately $189,-000 from his Legg Mason account to the Trust.[6]

We also do not accept Bill's assertion that the one-sided nature of the agreement strongly preponderates toward a finding of unconscionability. This court has found that even though a premarital agreement may be disproportionate, unfairness is not material to the enforceability of the agreement. *Chiles v. Chiles,* 779 S.W.2d 127, 129 (Tex.App.—Houston [14th Dist.] 1989, writ denied). A factual finding that a premarital agreement is unfair does not satisfy

---

**5.** The Agreement provides:

It has been strongly recommended, by the counsel of [Juanita], that [Bill] obtain counsel for representation in the negotiations of this "agreement," however, [Bill] has elected not to retain independent counsel. [Bill] represents that he enters into this "Agreement" with in-

formed consent and that this "Agreement" was not procured by fraud duress or overreaching. The Release contains similar language.

**6.** Based on these transfers, Juanita argues that even if the agreement is unconscionable, Bill nevertheless ratified the contract by his partial performance. But see *infra,* n. 7.

the burden of proof required to establish unconscionability. *Id.*

Bill argues that when he wrote the check to pay for Jarrard's services, he made a mistake in writing the amount, demonstrating that he was "not thinking straight" when he executed the agreement. While Bill testified that he remembered very little about the events leading to the execution of the premarital agreement, that he did not know the contents of envelopes he delivered to Jarrard to draft the agreement, and that he did not read the agreement, he was quite clear as to the value of the assets he transferred to the Trust and corrected Juanita's counsel as to the total amount. Bill acknowledged that before the marriage, he and Juanita did not live together and had no access to each other's financial information. He denied seeing the documents before their execution and testified he only spent about twenty minutes in Jarrard's office that day. The fact that Bill denied reading the premarital agreement is not grounds for avoiding the contract. Absent fraud, one is presumed to know the contents of a document he has signed and has an obligation to protect himself by reading a document before signing it. *Nautical Landings Marina, Inc. v. First Nat'l Bank in Port Lavaca,* 791 S.W.2d 293, 298 (Tex. App.—Corpus Christi 1990, writ denied).

The trial court, as the trier of fact, was the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Mohnke v. Greenwood,* 915 S.W.2d 585, 589–90 (Tex.App.—Houston [14th Dist.] 1996, no writ). The court may not have believed Bill's denial that he knowingly provided his financial documents and helped draft the premarital agreement because the testimony showed that only Bill had access to his personal financial documents and that Juanita had never seen the documents until they were attached to the premarital agreement. We cannot retry the case or otherwise substitute our judgment for that of the trier of fact. *Id.* at 589.

Over objection to testimony on matters of law, the trial court permitted Bill to present expert testimony from Donn Fullenweider, a board certified family law practitioner, who concluded that the premarital agreement is unconscionable per se. He testified the agreement was suspect because it was executed the day of the marriage and that Juanita's lawyer should have insisted that Bill have independent counsel. He also faulted the agreement for failing to contemplate the divorce of the parties. He conceded, however, that the Trust did not terminate upon divorce, and the Trustee had a duty to care for Bill during his lifetime with the Trust income. However, only Juanita has the power to withdraw the corpus of the trust and may do so at any time. In rebuttal, Juanita's expert, Warren Cole, also board certified in family law, testified that in his opinion, the premarital agreement is an enforceable contract. He opined that the agreement was definitely not unconscionable. For an agreement to be unconscionable, it must be "so far one-sided that no reasonable person could consider it to be an arm's length transaction." He testified fairness is not determinative of unconscionability.

Bill contends that the effect of the premarital agreement is to create a heavy tax burden for both parties, which was not the parties' intent. While it is true that the premarital agreement states the parties intended the transfers to the Trust to qualify for the "unlimited marital deduction gift," the agreement is silent as to any other tax consequences. Bill provided testimony from Mickey R. Davis, an estate-planning expert, who testified about the adverse tax consequences of the agreement. Davis opined that the premarital agreement may result in taxes of $450,000 to $550,000, which includes gift taxes, income taxes and potential estate taxes. He testified there was no way the parties could have understood the tax problems after a brief reading of the documents. Juanita's expert testified that adverse tax consequences would not cause the agreement to be unconscionable and have nothing to do with the enforceability or validity of the agreement. Juanita contends that any adverse tax consequences could have been corrected by reformation of the contract, but Bill failed to plead alternatively for reformation. Bill's tax expert agreed that the adverse tax effects of the agreement could be corrected. The trial court requested the

parties to agree to modify or reform the agreement to alleviate any potential tax problem, yet Bill refused. In addition, Juanita has agreed to pay any gift taxes that result from the agreement, although the testimony was that Bill was legally responsible for the taxes.

 In the absence of any evidence that the premarital agreement was obtained through an unfair advantage taken by Juanita, we must conclude Bill has not sustained his burden to defeat the presumption of enforceability. *Cf. Fanning v. Fanning,* 828 S.W.2d 135 (Tex.App.—Waco 1992), *rev'd in part on other grounds,* 847 S.W.2d 225 (Tex. 1993) (holding a postmarital partition agreement was unconscionable based on the husband's threats to divorce the wife and deprive her of custody of the children and a psychologist's testimony that the husband was manipulative and aggressive). "[T]he fact that a bargain is a hard one does not entitle a party to be relieved therefrom if he assumed it fairly and voluntarily." *Wade,* 524 S.W.2d at 86. Having reviewed all the evidence in our record, we conclude the evidence is both legally and factually sufficient to support the trial court's implied finding that the agreement is not unconscionable. Therefore, the trial court's conclusion of law that the agreement is enforceable is correct. We hold that the premarital agreement is not unconscionable as a matter of law.[7] Therefore, we overrule appellant's points of error one, two, five, six and seven.

### C. Lack of Disclosure

In his points of error three and four, Bill asserts that the trial court erred in its implied finding that he had been properly informed of Juanita's property and financial obligations. He contends he established as a matter of law that he received no such information before executing the premarital agreement. Alternatively, he asserts this finding is against the great weight and preponderance of the evidence.

 Having determined that the agreement is not unconscionable, we need not

reach the issue of lack of disclosure. Because disclosure forms the second prong of the test to rebut the presumption of enforceability, lack of disclosure is material only if the premarital agreement is unconscionable. *See* TEX.FAM.CODE ANN. § 5.46(a)(2)(A), (C) (Vernon 1993).

### D. Common Law Defense: Failure of Condition Precedent

 In his points eight and nine, Bill contends the trial court erred in enforcing the premarital agreement because Juanita failed to pay the gift tax attendant to Bill's transfers to the Trust. In point of error ten, Bill asserts the trial court's conclusions of law are erroneous because the court failed to apply contract law correctly.

> The agreement provided in relevant part: It is the intent of the parties that the transfer from Marsh to Jacobs shall qualify for the unlimited marital deduction gift as provided for by the provisions of the U.S. Internal Revenue Code concerning gifts to spouses and any provisions to the contrary in this Agreement or the Trust shall not take effect if such provisions would cause any gift taxes to be paid on the transfer of this gift, unless such taxes are paid by Jacobs from the property transferred.

Bill argues that the agreement has never come into effect because the transfers fail to qualify for the marital gift tax exemption. As part of this argument, he asserts that because Juanita has not paid the gift taxes he contends are due, his performance has been excused. Juanita responds that she has not paid any gift taxes because Bill has not filed a tax return. Expert testimony at trial agreed that the party making the gift is to file the gift tax return, if needed, although the testimony was contradictory as to whether a separate return was required under these circumstances.

 A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. Conditions precedent to an

---

7. Because we hold the agreement is valid, we do not reach Juanita's argument that Bill ratified

the contract by making payments to the Trust. See n. 6 *supra.*

obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976). While no particular words are necessary to create a condition, such terms as "if," "provided that," "on condition that," or some other phrase that conditions performance, usually connote an intent for a condition rather than a promise. In the absence of such a limiting clause, whether a contractual provision is a condition, rather than a promise, must be gathered from the contract as a whole and from the intent of the parties. *Id.* Because of their harshness in operation, conditions are not favorites of the law, and courts are inclined to construe the provisions in a contract as covenants rather than as conditions. *Id.*

We conclude that payment of gift taxes is not a condition precedent to Bill's performance of his obligations under the premarital agreement. Instead, we construe the provision as a covenant. To accept Bill's contention that payment of the gift taxes is a condition precedent to his performance would illogically require payment of the taxes *before* the gifts have been transferred. Indeed, construing the payment of the gift tax as a condition precedent renders performance under the contract impossible. We cannot sanction such a tortured interpretation. The record contains expert testimony that the gift tax is determined by the actions of the donor, not by those of the recipient, and is a function of, among other factors, the total lifetime gifts previously made by the donor. Thus, the recipient cannot know the amount of the applicable gift tax until the entire gift has been made and the gift tax calculated. *A fortiori,* payment of the gift tax is not a condition precedent to performance, but rather a covenant to be fulfilled upon completion of the transfer of the funds to the Trust. Accordingly, we overrule points of error eight through ten.

## II. Pre–Judgment Interest

■■■■ In his points of error fourteen through sixteen, Bill contends the trial court

erred *in awarding* pre-judgment interest at 10% per annum, which exceeds the 6% rate authorized by TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon 1987). Article 5069–1.03 provides:

> When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

TEX.REV.STAT.ANN. art. 5069–1.03 (Vernon 1987). Article 5069–1.03 does not apply when the damages cannot be calculated from the face of the contract itself. *Rio Grande Land & Cattle Co. v. Light*, 758 S.W.2d 747, 748 (Tex.1988); *Winograd v. Willis*, 789 S.W.2d 307, 312 (Tex.App.—Houston [14th Dist.] 1990, writ denied). When damages are not ascertainable from the face of the contract, a trial court may award 10% pre-judgment interest. *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929, 930–31 (Tex.1988). Otherwise, article 5069–1.03 limits the rate of pre-judgment interest for contracts which are silent on the issue to 6% per annum. TEX. REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon 1987).

■■■■ We apply an abuse of discretion standard to review the trial court's award of pre-judgment interest, giving limited deference to the lower court's application of the law to the facts. *European Crossroads' Shopping Center, Ltd. v. Criswell*, 910 S.W.2d 45, 55 (Tex.App.—Dallas 1995, writ denied). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *See NCNB Texas National Bank v. Coker,* 765 S.W.2d 398, 400 (Tex.1989).

Juanita admits the premarital agreement does not contain a provision for prejudgment interest. Bill contends the agreement sets out a method to ascertain the damages and therefore interest should be limited to 6%

per annum. *See Allied Chem. Co. v. DeHaven*, 824 S.W.2d 257, 266 (Tex.App.—Houston [14th Dist.] 1992, no writ). In *Perry Roofing Company*, the Texas Supreme Court acknowledged that it had construed article 5069–1.03 liberally by requiring that the contract fix "a measure by which the sum payable can be ascertained with reasonable certainty." 744 S.W.2d at 930 (citing *LaSara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 567 (Tex.1984)).

■ When extrinsic evidence is needed to determine the amount of contract damages, article 5069–1.03 does not apply. *Great Am. Ins. Co. v. North Austin MUD No. 1*, 933 S.W.2d 737, 739 (Tex.App.—Austin 1996, writ requested). The amount of Bill's interest in all the accounts of which he was to transfer half to Juanita was not determined at the time of the execution of the contract. One of the accounts contains assets that formerly belonged to Bill's late wife, in which Bill's interest had not been determined. Bill was to transfer one-half of the value of his interest "as it may be determined." Consequently, the premarital agreement is not a contract "ascertaining the sum payable" as required by article 5069–1.03. We hold that the trial court did not abuse its discretion in permitting pre-judgment interest to accrue at 10% per annum. Therefore, we overrule points of error fourteen through sixteen.

### III. Exclusion of Evidence

■ In his seventeenth point of error, Bill contends the trial court abused its discretion in excluding Juanita's testimony regarding her intent to effect a tax-neutral transaction when she executed the premarital agreement. Juanita's counsel objected that Bill's attempt to elicit this testimony was actually an effort to establish that the contract should not be enforced because it was based on the mutual mistake of the parties as to the tax consequences of their agreement. Mutual mistake is an affirmative defense which Bill failed to plead. *See* TEX.R.CIV.P. 94. Based on this lack of pleading, Juanita's counsel objected to testimony about the parties' intent and understanding of the tax consequences of the agreement. Juanita testified in a bill of exceptions that she would

not have executed the premarital agreement if she had known it would cause serious tax consequences for the parties.

■ A complaint based on the improper admission or exclusion of evidence is reviewed under an abuse of discretion standard. *Jackson v. Van Winkle*, 660 S.W.2d 807, 810 (Tex.1983). For the exclusion of evidence to constitute reversible error, the complaining party must show: (1) that the trial court committed error; and (2) that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex.1992); TEX.R.APP.P. 81(b)(1). In making this determination, we must review the entire record. *McCraw*, 828 S.W.2d at 757.

■ We hold that any mutual mistake by the parties concerning the potential tax consequences of the premarital agreement was properly excluded in the absence of a pleading to that effect. *See* TEX.R.CIV.P. 94. Moreover, any error in the trial court's exclusion of this evidence is harmless. While mutual mistake of fact destroys the necessary meeting of the minds for formation of a contract, a mutual mistake of law is not a ground for rescission or cancellation of a contract. *1st Coppell Bank v. Smith*, 742 S.W.2d 454, 462 (Tex.App.—Dallas 1987, no writ); *see also Ussery v. Hollebeke*, 391 S.W.2d 497, 502 (Tex.Civ.App.—El Paso 1965, writ ref'd n.r.e.). The parties' failure to understand the legal effect of their agreement for tax purposes is a mistake of law. *See 1st Coppell Bank*, 742 S.W.2d at 462. Moreover, in the absence of fraud, a party who fails to read a contract may not have relief based on mutual mistake of fact. *Estes v. Republic Nat'l Bank of Dallas*, 462 S.W.2d 273, 276 (Tex.1970). Bill admitted he did not read the premarital agreement. Therefore, even if the parties operated under a mistake of both fact and law, Bill is not entitled to relief. Accordingly, point of error seventeen is overruled.

In conclusion, we affirm the judgment of the trial court.