**Affirmed and Opinion Filed August 11, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01143-CV

### KAIZER SHERIFF, Appellant
### V.
### SHEHNAZ MOOSA, Appellee

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-54072-2011**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Fillmore
Opinion by Justice Bridges

Kaizer Sheriff appeals the trial court's final decree of divorce. In five issues, Sheriff argues the trial court erred in failing to confirm a foreign judgment; violated his due process and due course of law rights by denying registration of the foreign judgment without holding a hearing and denying enforcement of the parties' premarital agreement without holding a full trial on the merits; abused its discretion by failing to uphold and enforce the premarital agreement; and failing to include an enforceable possession schedule for the parties' child. We affirm the trial court's judgment.

Sheriff and Shehnaz Moosa were married in 2004 and had one child, A.K.S. On August 12, 2012, Moosa filed her original petition for divorce alleging Sheriff had a "history or pattern of committing family violence during the two-year period preceding the date" of the petition.

The petition requested the court to determine whether there was a risk of international abduction of A.K.S. and to take measures necessary to protect A.K.S.

On August 24, 2011, Sheriff filed his original counterpetition for divorce seeking, among other things, to be "designated as the conservator who has the exclusive right to designate the primary residence of" A.K.S. Sheriff alleged he was a domiciliary of Texas for the preceding six-month period and a resident of Collin County for the preceding ninety-day period. Sheriff alleged he and Moosa had entered into a prenuptial agreement defining their rights to their property and requested the court to confirm and enforce the agreement. The prenuptial agreement was attached as an exhibit. The agreement provided that all property and assets of each party would remain that party's sole personal property. The agreement further provided that the parties agreed to get married under the Muslim Personal Marriage Laws that govern Muslim marriages in India, to conduct the marriage according to the Muslim Shia Ismaili traditions, and to get married by the "nikha" ceremony.

On September 7, 2011, the trial court conducted a hearing at which Moosa testified Sheriff straddled her and punched her in the face with a closed fist in October 2009, slapped Moosa while she was holding her daughter on Memorial Day 2010, and threatened to take Moosa's daughter away from her on "multiple occasions." Moosa testified she feared being alone with Sheriff and feared A.K.S. being alone with him because she feared Sheriff would take A.K.S. away from her. Moosa testified Sheriff has property in India, and she was concerned about him having control of A.K.S.'s passport.

Moosa testified she signed the prenuptial agreement in August 2004. She was not represented by an attorney at the time. Moosa testified her marriage to Sheriff was an arranged marriage, and Sheriff said he wasn't going to get married unless the prenuptial agreement had been signed. Sheriff said he got the prenuptial agreement "off the Internet," and he gave Moosa

–2–

"a few minutes to look over it."  Moosa testified she did not think the prenuptial agreement was fair, she did not think it adequately provided her with information regarding Sheriff's assets and liabilities, she had no opportunity to obtain disclosure of Sheriff's assets and liabilities, and Sheriff did not ask her for copies of her assets and liabilities.

Moosa testified she makes $56,860 yearly, and Sheriff makes approximately $120,000, but they each paid half of their monthly bills, including the mortgage on the marital residence. Moosa testified that, despite the terms of the prenuptial agreement, she needed child support, temporary spousal support, and assistance for attorney's fees.  Moosa testified Sheriff had been alone with A.K.S. three times, had never been overnight with A.K.S. alone, and had only asked to see A.K.S. six times since the divorce was filed.  Moosa requested that the court appoint a parenting facilitator to help Sheriff and Moosa "learn how to co-parent together."

At the conclusion of the hearing, the trial court named Sheriff and Moosa joint managing conservators of A.K.S., with Moosa having physical custody and Sheriff having standard visitation.  Concerning the prenuptial agreement, the trial court stated, "my personal view at the moment is the pre-nup is against public policy.  It attempts to change the laws of the State of Texas and I don't think it can do that."

On December 14, 2011, the trial court entered temporary orders prohibiting either Sheriff or Moosa from removing A.K.S. from the jurisdiction and ordering A.K.S.'s passport to be turned over to Moosa's attorney for safe-keeping.  The temporary orders set out a visitation schedule, ordered Sheriff to pay $1500 per month in child support and $3000 for interim attorney's fees, and made provisions for A.K.S.'s health care.  Sheriff also received temporary exclusive use of the marital residence.

On February 8, 2012, Sheriff filed a petition to register a foreign judgment.  The "foreign judgment" was a letter from an "advocate high court" in India purporting to memorialize

Sheriff's pronouncement of "Talaq," thereby dissolving his marriage with Moosa. The letter stated Sheriff acted in accordance with the prenuptial agreement between the parties and its provision that the parties were married in accordance with Muslim Personal Marriage Laws. Also attached to the petition was an "opinion" from "Advocate Neelofar Akhtar" purporting to make a distribution of property and custody determination. In a supporting affidavit, Sheriff represented, among other things, that he was "a bonafide domiciliary of the State of Maharashtra, India," and therefore A.K.S. was "also a domicile [sic] of India."

On February 17, 2012, Moosa filed an emergency motion for temporary restraining order, objection to registration of foreign order, and motion for additional temporary orders and injunctive relief. Moosa argued the "foreign order" Sheriff sought to register was registered more than six months after Moosa filed her original divorce petition and more than five months after the trial court ruled on temporary orders in the divorce. Moosa requested that the trial court strike Sheriff's attempt at registering the foreign order. Moosa also requested that Sheriff be enjoined from certain acts, including instituting any action in any other county, state, or nation in an attempt to obtain orders concerning the marriage relationship of the parties. That same day, the trial court entered an order restraining Sheriff from the enumerated acts, enjoining Sheriff and his family from exercising any periods of possession or access to A.K.S. until the validity of the foreign order could be determined.

On March 9, 2012, the trial court conducted a hearing at which Moosa's counsel stated he was "taken aback" when he learned Sheriff had filed or initiated an Indian divorce. Counsel characterized Sheriff's actions as an attempt to not only reverse the trial court's rulings in temporary orders hearings in September and October but also to "declare the marriage over by divorce deed," reverse all the custody and child support arrangements, and allow Sheriff and his father to do whatever they wanted with A.K.S. Sheriff's counsel responded that Sheriff had "a

–4–

right to allege that there's a foreign decree and ask the law in Texas to recognize that decree and give full faith and credit to it." Sheriff testified at the hearing that he registered the Indian "decree" because the prenuptial agreement said he and Moosa were married under Muslim law, and he "sought a divorce through the officials of [his] faith in India." Sheriff testified he stood by his "comments in the affidavit attached to [his] foreign filing." At the conclusion of the hearing, the trial court took the matter under advisement.

The trial court continued to enter temporary orders. On October 25, 2012, Sheriff filed a "notice of determination of law of foreign country" asking the trial court to take notice of the Muslim Women (Protection of Rights on Divorce) Act; the "Divorce Certificate from Chief Judge Mumbai, India"; the Opinion of Neelofar Akhtar; and the "Muslim Personal Law (Shariat) Application Act 1937."

On November 12, 2012, Moosa filed her first amended petition for divorce in which she sought to be appointed sole managing conservator of A.K.S. and requested the appointment of a parenting facilitator. Moosa also requested appropriate orders on the basis of prior findings that there was a risk of international abduction of A.K.S. by Sheriff. Moosa asked that she be appointed temporary sole managing conservator of A.K.S. and that Sheriff be enjoined from removing A.K.S. beyond a geographic area identified by the court.

On November 28, 2012, the trial court conducted a pretrial hearing at which Sheriff's attorney stated Sheriff was "still in India" caring for his sick father. Sheriff's counsel orally requested a continuance and argued the trial could not proceed without Sheriff being present. Moosa's counsel alleged Sheriff was in India "because he voluntarily flew to India when he was court ordered to surrender his passports because the judge in May" determined that might "best address his abduction issue." Moosa's counsel noted Sheriff had initiated a foreign divorce in India "six months after this case started" and argued Sheriff was in India because he was subject

to a motion for enforcement for failing to pay six months' child support. Moosa's counsel stated Sheriff had also stopped making payments on the marital residence and allowed the residence to go into foreclosure before the trial court appointed a receiver to sell the residence. The trial court asked whether Sheriff's counsel wanted to "urge [his] pretrial motions" or "rest on the pleadings," and counsel stated he would "rest on the pleadings." The trial court then denied Sheriff's motion to enforce the prenuptial agreement, motion to dismiss due to mootness, motion to recover property taxes, motion for recovering attorney's fees, and motion for sanctions. After additional arguments, the trial court granted Moosa's motion to compel production of Sheriff's financial documents.

On December 10, 2012, the trial court conducted a trial before the court. Moosa again testified that Sheriff verbally and physically abused her during the marriage. Moosa testified she believed Sheriff went to India to avoid paying child support. At the conclusion of trial, the trial court granted the divorce and named Moosa the sole managing conservator of A.K.S. with the exclusive right to determine A.K.S.'s residency, consent to medical treatment and make educational decisions with no geographic restrictions. Sheriff was awarded supervised possession and ordered to pay child support. Moosa was awarded sixty percent of the community estate, and Sheriff was awarded forty percent. Moosa was appointed receiver over the community accounts, and Sheriff was ordered to pay her $17,100 in attorney's fees. On May 16, 2013, the trial court entered the final divorce decree, and this appeal followed.

In his first issue, Sheriff argues the trial court erred in failing to confirm the foreign judgment "pursuant to statutory mandate that the order shall be confirmed where the party opposing the registration fails to request a hearing within 20 days of notice of the registration." Sheriff relies on family code sections 152.305, relating to registration of out-of-state custody determinations, and 159.606, relating to interstate family support, in arguing Moosa had to

request a hearing within twenty days of receiving notice of the "foreign judgment." *See* TEX. FAM. CODE ANN. §§ 152.305(d); 159.606(a) (West 2014) (person seeking to contest validity of child custody determination or registration of support order issued by court of another state must request hearing within 20 days after service of notice of the determination or registration). Sheriff argues Moosa did not request a hearing within twenty days and therefore the "foreign judgment" "should have been confirmed by operation of law."

The record shows Sheriff filed a petition to register a foreign judgment on February 8, 2012. On February 17, 2012, Moosa filed a pleading which, among other things, objected to the registration of the "purported 'orders'" under both chapters 152 and 159 of the family code and requested "a hearing on same within 20 days of" receipt of notice of the registration, which was February 16, 2012. Because the record shows Moosa did request a hearing within twenty days of receiving notice of the "foreign judgment," we conclude Sheriff's first issue lacks merit.

In his second issue, Sheriff argues the trial court's denial of registration of the foreign judgment without conducting a hearing violated his due process and due course of law rights. In making this argument, Sheriff refers to the May 29, 2013 order denying his registration of a foreign judgment because the court previously rendered a divorce on December 10, 2012. The order refers to a January 22, 2013 trial on the registration issue, and Sheriff argues this trial was canceled, thus depriving him of his right to a hearing. Sheriff's argument ignores the fact that the "foreign judgment" continued to be an issue throughout the divorce proceedings. Specifically, the "foreign judgment" and its reason for being were discussed at length at the hearing on March 9, 2012. Because the record shows the trial court conducted a hearing on Sheriff's motion to register the "foreign judgment," we conclude his second issue lacks merit.

In his third issue, Sheriff argues the trial court violated his due process and due course of law rights by denying enforcement of the prenuptial agreement during a pretrial conference and

–7–

without holding a full trial on the merits, depriving him of a meaningful right to be heard. In his fourth issue, Sheriff argues the trial court abused its discretion by failing to uphold and enforce the presumptively valid prenuptial agreement.

Premarital agreements are presumed to be enforceable. *Marsh v. Marsh*, 949 S.W.2d 734, 739 (Tex. App.—Houston [14th Dist.] 1997, no writ) (citing *Grossman v. Grossman*, 799 S.W.2d 511, 513 (Tex. App.—Corpus Christi 1990, no writ)). To rebut that presumption, the party seeking to avoid enforcement must prove either that: she signed the agreement involuntarily; or the agreement was unconscionable when signed and the agreement failed to fairly and reasonably disclose the "property and financial obligations of the other party." *See* TEX. FAM. CODE ANN. §4.006(a) (West 2006); *see also Marsh*, 949 S.W.2d at 739. In reviewing whether the agreement is conscionable, courts have considered factors such as the maturity of the parties, their educational levels and business backgrounds, their experiences with prior marriages, their respective ages, and whether there were motivations to protect children. *See Marsh*, 949 S.W.2d at 741. "Because disclosure forms the second prong of the test to rebut the presumption of enforceability, lack of disclosure is material only if the premarital agreement is unconscionable." *Id.* at 743; *see also Fazakerly v. Fazakerly*, 996 S.W.2d 260, 265 (Tex. App.—Eastland 1999, pet. denied) ("The issue of unconscionability must be decided by the trial court as a matter of law before the disclosure questions are addressed.").

Moosa testified she was not represented by an attorney at the time she signed the prenuptial agreement in August 2004. Moosa testified her marriage to Sheriff was an arranged marriage, and Sheriff said he wasn't going to get married unless the prenuptial agreement had been signed. Sheriff said he got the prenuptial agreement "off the Internet," and he gave Moosa "a few minutes to look over it." Moosa testified she did not think the prenuptial agreement was fair, she did not think it adequately provided her with information regarding Sheriff's assets and

liabilities, she had no opportunity to obtain disclosure of Sheriff's assets and liabilities, and Sheriff did not ask her for copies of her assets and liabilities. The trial court stated the prenuptial agreement attempts to change the laws of the State of Texas. Based on this record, we conclude the trial court did not err in refusing to enforce the prenuptial agreement because it was unconscionable and Moosa was not provided any disclosure of Sheriff's property or financial obligations. *See* TEX. FAM. CODE ANN. §4.006(a) (West 2006); *see also Marsh*, 949 S.W.2d at 739. We overrule Sheriff's third and fourth issues.

In his fifth issue, Sheriff argues the trial court's failure to include an enforceable possession schedule in the divorce decree violates his constitutional rights with respect to his child and renders the decree void. Specifically, Sheriff complains of the following provisions in the divorce decree:

Possession and Access

1. Mutual Agreement or Specified Terms for Possession

IT IS FURTHER ORDERED AND DECREED that KAIZER SHERIFF shall have supervised possession of the child at any and all times mutually agreed to between him and SHEHNAZ MOOSA in advance, and in the absence of mutual agreement, IT IS ORDERED AND DECREED that KAIZER SHERIFF shall have possession of the child under the specified terms set out below in this Possession Order.

2. Supervised Possession with Stair-Stepping Procedures

The Court finds that Respondent has remained intentionally removed from the subject child. Therefore, IT IS ORDERED that Respondent shall have supervised possession of and access to the subject child for a period of no less than eight (8) months, which Respondent must exercise prior to receiving any unsupervised periods of possession. All supervision shall be directed at the discretion of Petitioner. Additionally, prior to any unsupervised periods of possession, the parties shall retain a parenting facilitator to oversee the terms and conditions of "stair-stepping" Respondent's periods of possession from a supervised possession schedule to an unsupervised possession schedule, culminating with a Standard Possession Schedule, which shall be installed at such time as the parenting facilitator reports that Respondent is 1) not a flight risk, and 2) has complied and cooperated with all the terms and conditions of the parenting facilitator's efforts to monitor and facilitate the "stair-stepping" schedule.

Sheriff argues these provisions exceed the authority of the trial court and give Moosa the absolute discretion to determine when, where, and if Sheriff may have possession of A.K.S. Sheriff argues the order amounts to an effective denial of Sheriff's right to visitation.

Trial courts have wide discretion to determine a child's best interest, including issues of custody, control, possession and visitation. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). This is because the trial court is in the best position to observe the demeanor and personalities of the parties and witnesses and to evaluate credibility, influences, and other forces that are not discernible from a cold record. *In re Herd*, 537 S.W.2d 950, 952 (Tex. App.—Amarillo 1976, writ ref'd n.r.e.); *In re T—*, 715 S.W.2d 416, 418 (Tex. App.—Dallas 1986, no writ); *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied). Appellate courts will reverse a trial court's determination of conservatorship only if a review of the entire record reveals the trial court's decision was arbitrary or unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *Patterson v. Brist*, 236 S.W.3d 238, 23940 (Tex. App.—Houston [1st Dist.] 2006, pet dism'd). A trial court does not abuse its discretion "as long as some evidence of a substantive and probative character exists to support the trial court's decision." *In re W.M.*, 172 S.W.3d 718, 725 (Tex. App.—Fort Worth 2005, no pet.). Further, the evidence is viewed in the light most favorable to the trial court's decision, and every legal presumption is indulged in favor of its judgment. *Holley*, 864 S.W.2d at 706.

Here, Moosa testified Sheriff threatened to take A.K.S. away from Moosa on "multiple occasions." Moosa testified Sheriff had been alone with A.K.S. three times, had never been overnight with A.K.S. alone, and had only asked to see A.K.S. six times since the divorce was filed. Moosa testified she believed Sheriff went to India to avoid paying child support. Based on this testimony and the evidence of the risk Sheriff might abduct A.K.S. and flee to India if he had

–10–

unsupervised possession, the trial court did not abuse its discretion in requiring Sheriff to have supervised possession at Moosa's discretion. *See In re J.A.J.*, 243 S.W.3d at 616; *Holley*, 864 S.W.2d at 706. We overrule Sheriff's fifth issue.

We affirm the trial court's judgment.


131143F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

KAIZER SHERIFF, Appellant

No. 05-13-01143-CV      V.

SHEHNAZ MOOSA, Appellee

On Appeal from the 380th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 380-54072-2011.
Opinion delivered by Justice Bridges.
Justices Lang-Miers and Fillmore
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee SHEHNAZ MOOSA recover her costs of this appeal from
appellant KAIZER SHERIFF.

Judgment entered August 11, 2015.