

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00446-CV

_____

LINDA KAYE MCDONALD, Appellant

V.

CECIL DALE MCDONALD, Appellee

On Appeal from the 233rd District Court
Tarrant County, Texas
Trial Court No. 233-708703-21

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

This appeal arises from a division of property incident to a divorce. In a single issue, Wife Linda Kaye McDonald argues that the trial court erred by finding that the premarital agreement between Husband Cecil Dale McDonald and Wife is valid and enforceable. We will affirm.

## I. BACKGROUND

Husband and Wife initially married in 1968 and divorced in 1974. After a series of other marriages to and divorces from other partners,[1] Husband and Wife remarried in September 2018.

Shortly before Husband and Wife remarried, they began living together in a house located at 6412 Alexandra Meadows Drive in Fort Worth, Texas. Husband and Wife each paid $23,000 toward the down payment on the home. Because Husband was still in the middle of divorce proceedings with his previous wife at the time of purchase, his name was not initially placed on the deed, but a new deed reflecting his ownership was executed in December 2017.

Husband and Wife planned to remarry as soon as Husband's divorce was finalized. But in July 2018, Wife texted Husband that she intended to remarry her other ex-husband Greg instead and told Husband that he should go on their paid-for honeymoon cruise alone.

---

[1]The record reflects that as of the commencement of this divorce proceeding, both Husband and Wife had been married four times, including twice to each other.

In August 2018, Wife had a change of heart and decided that she wanted to remarry Husband after all. Husband was still prepared to re-marry Wife but had some reservations due to her recent vacillation. Specifically, given his age and financial situation, Husband was concerned that he would have difficulty finding a place to live if Wife divorced him and their house was sold as part of a property division. To alleviate his concerns, he asked Wife if she would be willing to enter into a premarital agreement. After Wife expressed her willingness, Husband—without the assistance of an attorney—drafted a simple premarital agreement providing in relevant part as follows:

> If [Wife] file[s] for divorce from [Husband], all equity from [their] jointly owned house at 6412 Alexandra Meadows Dr., Fort Worth, TX 76131 will go to [Husband]. When the property is sold, [Wife agrees] that all proceeds from the sale[] will go to [Husband].
>
> If [Husband and Wife] have subsequently purchased another home prior to [Wife's] filing for divorce, all equity proceeds from its sale will go to [Husband.]
>
> . . . .
>
> [Wife] freely agree[s] to the above provisions without reservation or pressure.

On August 25, 2018—eight days before they remarried—Husband and Wife signed the agreement at a UPS store before a witness and a notary.

In November 2020, Husband and Wife sold the Alexandra Meadows home and purchased a new house located at 12224 Treeline Drive in Crowley, Texas. They used approximately $50,000 of the sale proceeds from the Alexandra Meadows home as a

down payment on the Treeline house. Husband and Wife lived in the Treeline house until October 2021 when Wife moved out to reunite with her ex-husband Greg.

Wife filed for divorce in November 2021. In March 2022, Wife filed a summary judgment motion requesting that the trial court declare the premarital agreement unenforceable on the grounds that it is unconscionable. The trial court declined to grant Wife's summary judgment motion[2] and, in August 2022, conducted a bench trial regarding the division of the marital estate. During trial, Wife again argued that the premarital agreement is unenforceable because it is unconscionable and because Husband had failed to properly disclose his property and financial obligations to Wife before the agreement was signed. Rejecting Wife's arguments, the trial court concluded that the premarital agreement was enforceable and signed a divorce decree awarding the Treeline house to Husband as his sole and separate property. This appeal followed.

---

[2]The clerk's record contains a letter confirming that Wife's summary judgment motion was set for hearing on March 30, 2022, and Husband's proposed order denying the motion, but it does not contain a denial order signed by the trial court. Nevertheless, because Wife's summary judgment motion solely concerned the enforceability of the premarital agreement and this issue was decided as part of the August 2022 bench trial, it appears that the trial court denied Wife's summary judgment motion.

## II. Discussion

In her sole issue on appeal, Wife argues that the trial court erred by rejecting Wife's argument that the premarital agreement is unconscionable and instead finding it to be valid and enforceable. We disagree.

### A. Standard of Review

The issue of a premarital agreement's unconscionability is a question of law for the court. Tex. Fam. Code Ann. § 4.006(b). We review conclusions of law de novo. *Garner v. Long*, 49 S.W.3d 920, 922 (Tex. App.—Fort Worth 2001, pet. denied) (citing *Piazza v. City of Granger*, 909 S.W.2d 529, 532 (Tex. App.—Austin 1995, no writ)). While we are not bound by a trial court's conclusions of law, we will uphold them if the judgment can be sustained on any legal theory supported by the evidence. *Wyde v. Francesconi*, 566 S.W.3d 890, 894–95 (Tex. App.—Dallas 2018, no pet.). Even an incorrect conclusion of law will not require a reversal if the controlling findings of fact support a correct legal theory. *Id.* at 895; *Garner*, 49 S.W.3d at 922.

### B. The Premarital Agreement Is Enforceable

"Texas has a 'strong public policy favoring freedom of contract' that is 'firmly embedded in our jurisprudence.'" *In re Marriage of I.C. & Q.C.*, 551 S.W.3d 119, 124 (Tex. 2018) (quoting *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 471 (Tex. 2016)). The Texas Supreme Court has repeatedly recognized that "parties 'shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by [c]ourts.'" *Id.* (quoting *Gym-*

5

*N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex. 2007)). In the same vein, the supreme court has cautioned that we should "rarely find a contract unenforceable on public policy grounds" and that "[p]remarital agreements are no exception." *Id.*

In accordance with this strong freedom-of-contract policy, premarital agreements are presumed to be valid and enforceable under Texas law. *Marsh v. Marsh*, 949 S.W.2d 734, 739 (Tex. App.—Houston [14th Dist.] 1997, no writ) (citing *Grossman v. Grossman*, 799 S.W.2d 511, 513 (Tex. App.—Corpus Christi–Edinburg 1990, no writ)); *see also Larson v. Prigoff*, No. 05-99-01755-CV, 2001 WL 13352, at *1 (Tex. App.—Dallas Jan. 8, 2001, no pet.) (not designated for publication) ("Texas law generally favors premarital agreements." (first citing *Beck v. Beck*, 814 S.W.2d 745, 749 (Tex. 1991); and then citing *Grossman*, 799 S.W.2d at 513)). To rebut this presumption, the party seeking to avoid enforcement must prove either (1) that she signed the agreement involuntarily or (2) that the agreement is unconscionable and failed to fairly and reasonably disclose the "property or financial obligations of the other party." *See* Tex. Fam. Code Ann. § 4.006(a); *see also Marriage of I.C. & Q.C.*, 551 S.W.3d at 124; *Moore v. Moore*, 383 S.W.3d 190, 194–95 (Tex. App.—Dallas 2012, pet. denied); *Marsh*, 949 S.W.2d at 739.

Wife argues that the premarital agreement is unconscionable and that Husband failed to adequately disclose his property and financial obligations. *See* Tex. Fam. Code Ann. § 4.006(a)(2). "Because disclosure forms the second prong of the test to rebut the presumption of enforceability, lack of disclosure is material only if the premarital

agreement is unconscionable." *Marsh*, 949 S.W.2d at 743. Thus, we will begin our analysis with the threshold question of unconscionability. *See id.*; *see also Fazakerly v. Fazakerly*, 996 S.W.2d 260, 265 (Tex. App.—Eastland 1999, pet. denied) ("The issue of unconscionability must be decided by the trial court as a matter of law before the disclosure questions are addressed.").

Neither the Texas legislature nor Texas courts have precisely defined unconscionability in the context of prenuptial agreements. *Marsh*, 949 S.W.2d at 739. Rather, courts have addressed unconscionability claims on a case-by-case basis by examining "the entire atmosphere in which the agreement was made." *Id.* (citing *Pearce v. Pearce*, 824 S.W.2d 195, 199 (Tex. App.—El Paso 1991, writ denied)). In performing this analysis, courts have considered factors such as (1) the maturity and age of the individuals, (2) their business backgrounds, (3) their educational levels, (4) their prior marriages, and (5) other motivations, including the parties' motivation to protect their respective children. *Id.* at 741 (citing *Williams v. Williams*, 720 S.W.2d 246, 249 (Tex. App.—Houston [14th Dist.] 1986, no writ)). But courts have also acknowledged that "a party who knowingly enters a lawful but improvident contract is not entitled to protection by the courts," and "[i]n the absence of any mistake, fraud, or oppression, the courts . . . are not interested in the wisdom or impolicy of contracts and agreements voluntarily entered into between [competent] parties." *Id.* at 740 (quoting *Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. App.—Texarkana 1975, no writ)).

7

Here, taking into account the "entire atmosphere" in which Husband and Wife entered into the premarital agreement, we cannot conclude that it is unconscionable. *See id.* at 739. Husband and Wife are nearly identical in age and have both been married multiple times, including twice to each other. Nothing in the record suggests that Husband's business background or educational level gave him an advantage in sophistication or bargaining power, nor has Wife asserted that this was the case. Moreover, Husband had a very specific motivation for making the premarital agreement: he was afraid that if Wife divorced him—which was a very real possibility considering Wife had previously divorced him and had backed out of their most recent engagement only a month earlier—and the couple's home was sold as part of a property division, he might be left homeless.

Wife argues that the premarital agreement was unconscionable because "[it] was not fair"; because Wife did not understand that the agreement applied not only to the Alexandra Meadows home but also to any "subsequently purchased" home; and because she did not have sufficient time to review the agreement or consult with an attorney before it was signed.[3] These arguments lack merit.

_____

[3]Wife also asserts that the agreement's release language, which provides that Wife "freely agree[d]" to the agreement's terms "without reservation or pressure," is ambiguous and inadequate because it is "devoid of an acknowledgement that [Wife] fully understood the terms of the premarital agreement, that she entered into the agreement with informed consent, and that it was not procured by fraud, duress, or overreaching." Even accepting Wife's assertion as true, this is not grounds for holding the agreement unenforceable. "[T]he only formality required by the Texas Family Code for a premarital agreement is that it 'must be in writing and signed by both

8

First, "unfairness is not material to the enforceability of the agreement." *Id.* at 741 (citing *Chiles v. Chiles*, 779 S.W.2d 127, 129 (Tex. App.—Houston [14th Dist.] 1989, writ denied)). Thus, even if the trial court had found the premarital agreement to be disproportional, such a finding would "not satisfy the burden of proof required to establish unconscionability." *See id.* at 741–42.

Second, because Wife signed the agreement after having been given the opportunity to read it,[4] she is presumed to know its contents. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 423–24 (Tex. 2015). This is true even if—as Wife claims—she chose not to read it.[5] *See Reynoso v. Dibs, US, Inc.*, 541 S.W.3d 331, 340 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Nat'l Prop. Holdings,*

---

parties.'" *In re Marriage of Sauls & Worley*, 648 S.W.3d 359, 363–64 (Tex. App.—Texarkana 2021, no pet.) (citing Tex. Fam. Code. Ann. § 4.002). Thus, no specific release language is required. Moreover, because the premarital agreement is presumed to be valid, *see Sheriff v. Moosa*, No. 05-13-01143-CV, 2015 WL 4736564, at *4 (Tex. App.—Dallas Aug. 11, 2015, no pet.) (mem. op.), it was not incumbent on Husband to include specific language in the agreement reflecting that Wife understood its terms or that it was not procured by fraud, duress, or overreaching; rather, Wife, as the party seeking to avoid the agreement's enforcement, has the burden to show unconscionability, *see id.*; *Marsh*, 949 S.W.2d at 739.

[4]While Husband's and Wife's accounts differ regarding the amount of time Wife had to review the agreement, at a minimum, Wife acknowledged having the opportunity to read the agreement—which is only two paragraphs in length—at the UPS store shortly before signing.

[5]Husband contends that Wife read the agreement multiple times before it was executed, including at the UPS store just before it was signed. But while Wife acknowledged having the opportunity to read the agreement at the UPS store, she testified that "there w[ere] so many people in line, I didn't want to take the time to read it."

9

453 S.W.3d at 423–24). "One who signs an instrument without reading it can avoid this presumption under a narrow 'trick or artifice' exception by showing that the signing party was prevented by a fraudulent trick or artifice from reading the instrument or having the instrument read to the signing party," *id.* (citing *Nat'l Prop. Holdings*, 453 S.W.3d at 425), but Wife has not alleged any such "trick or artifice" here. Therefore, we presume that Wife knew and accepted all of the terms of the premarital agreement, including the clause applying the agreement not only to the Alexandra Meadows home but also to any "subsequently purchased" home.

Third, Wife's argument that she was not given sufficient time to review the agreement and consult with an attorney is specious. Wife testified that at the time the agreement was signed, no wedding date had been set. Thus, if Wife had concerns about the premarital agreement or wanted to have an attorney review it, the wedding could have easily been delayed to allow her time to consult with counsel. Moreover, because "the advice of counsel is not a prerequisite to the validity of a premarital agreement," *Marriage of Sauls & Worley*, 648 S.W.3d at 364 (citing Tex. Fam. Code Ann. § 4.002), the mere fact that Wife was not represented by counsel is not sufficient to show unconscionability, *cf. Pearce*, 824 S.W.2d at 199 (concluding postmarital agreement was not unconscionable even though "at the time the agreement was signed, [wife] did not have a lawyer, she did not read or understand the agreement[,] and there was no reasonable disclosure of its effect made to her" because wife "kept the books" for her husband and had encouraged her daughter-in-law to sign the

10

agreement against the daughter-in-law's attorney's advice). Indeed, because neither party was represented by an attorney in connection with the drafting or execution of the premarital agreement, Wife's lack of legal counsel did not place her in an inferior position to Husband.

In sum, considering the "entire atmosphere" surrounding the execution of the premarital agreement, we conclude that Wife has not met her burden to show that it is unconscionable. *See Marsh*, 949 S.W.2d at 739. Accordingly, we need not address the adequacy of Husband's financial disclosures. *See* Tex. Fam. Code Ann. § 4.006(a)(2); *Michelina v. Michelina*, No. 13-09-00588-CV, 2012 WL 3012642, at *18 (Tex. App.— Corpus Christi–Edinburg June 15, 2012, no pet.) (mem. op.); *Marsh*, 949 S.W.2d at 739; *see also* Tex. R. App. P. 47.1.

We overrule Wife's sole issue.

### III. Conclusion

Having overruled Wife's sole issue, we affirm the trial court's judgment.


/s/ Mike Wallach
Mike Wallach
Justice

Delivered: June 8, 2023

11