

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00284-CV

———————————————

DAVID MARK LOYD, Appellant

V.

KYMBERLY LOYD, Appellee

On Appeal from the 481st District Court
Denton County, Texas
Trial Court No. 21-6418-393

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Appellant David Mark Loyd (Husband) appeals from a divorce decree dissolving his marriage to appellee Kymberly Loyd (Wife). In eleven issues, which we treat as ten,[1] Husband argues that the trial court erred by (1) disregarding certain intercompany loans between two entities wholly owned by Husband—ML Resources, Inc. (ML Resources) and Imagery Exploration, Inc. (Imagery)—when calculating the amounts to which Wife was entitled under the parties' premarital agreement (PMA); (2) finding that Husband had breached his fiduciary duty to Wife; (3) finding that Husband had breached the PMA; (4) not finding that Wife had breached the PMA; (5) characterizing certain assets purportedly belonging to ML Resources as Husband's separate property; (6) declaring that, as used in the PMA, the term "salaries payable to [Husband] generated solely from the new business entity" means all sums that Imagery had available for the payment of salaries to Husband, including net income; (7) ordering Husband to pay $2,300.00 in monthly child support despite a purported lack of evidence to support this award; (8) failing to require Wife to provide Husband

---

[1]The argument raised in Husband's fifth issue is also part of the arguments he raises in his first and eleventh issues. Because we will address this argument as part of our analysis of these other issues, we do not treat it as a stand-alone issue. *See Nickerson v. Pineda*, No. 13-17-00346-CV, 2019 WL 2041774, at *1 (Tex. App.—Corpus Christi–Edinburg May 9, 2019, pets. denied) (mem. op.) (condensing appellant's four appellate issues into three); *cf. McKinney v. Meador*, 695 S.W.2d 812, 813 (Tex. App.—Tyler 1985, writ ref'd n.r.e.) (combining all of appellant's points addressing separate elements of prejudgment interest claim and treating them as one challenge to the propriety of awarding prejudgment interest). Nevertheless, for ease of reference, we will refer to Husband's appellate issues by the numbers assigned to them in his brief.

an explanation of benefits showing the uninsured portion of any healthcare expenses for the couple's children before Husband was required to pay his share of any such expenses; (9) awarding Wife attorney's fees; and (10) failing to award Husband attorney's fees. We will affirm.

## I. BACKGROUND

Husband and Wife married in April 2008. They have two children.

Prior to marriage, Husband and Wife entered into the PMA, which contained provisions addressing the characterization of their property—whether acquired before or after marriage—and delineating the parties' respective rights and obligations in the event of a divorce proceeding. Specifically, the PMA provided, among other things, that no community property would be created during the parties' marriage; that all marital property would be owned by the separate estates of the parties; and that no community estate would be created during the marriage.

In July 2021, Wife sued for divorce, and Husband countersued shortly thereafter. The protracted divorce proceedings focused on the parties' property rights under the PMA[2] and the allocation of Husband's and Wife's parental rights and obligations with respect to their two children.

---

[2]Each party asserted that the other had breached the PMA and sought declaratory relief to that effect. Additionally, Wife sought a declaratory judgment that Husband had breached his fiduciary duty to her by, inter alia, engaging in transactions designed to minimize the amount to which she would be entitled under the PMA in the event of a divorce and failing to fully and fairly disclose information concerning these transactions.

After a three-day bench trial, the trial court signed a final divorce decree in May 2024. Among other things, the decree (1) appointed Husband and Wife as their children's joint managing conservators; (2) ordered Husband to pay Wife $2,300.00 in monthly child support; (3) declared that Husband had breached (i) the PMA and (ii) his fiduciary duty to Wife; (4) awarded Wife a judgment in the total amount of $321,120.64 for damages and attorney's fees;[3] and (5) awarded Wife's counsel a judgment in the amount of $46,466.04 for attorney's fees incurred in connection with the suit affecting the parent–child relationship (SAPCR). At Husband's request, the trial court filed findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296, 297; *see also* Tex. Fam. Code Ann. § 6.711. This appeal followed.

## II. DISCUSSION

### A. Intercompany Loans

In his first issue, Husband contends that the trial court erred by disregarding Imagery's loan obligations to ML Resources and himself when determining the amounts to which Wife was entitled under the PMA. We disagree.

#### 1. Relevant Background

Paragraph 7.5 of the PMA contemplated that Husband, who is a petroleum engineer involved in various oil and gas enterprises, would create a "new business entity," that this entity would be his "sole and separate property," and that the entity's

---

[3]The decree awarded Wife $254,315.93 in damages and $66,804.71 in attorney's fees.

4

"working capital" would "come from a loan or loans from . . . [ML Resources]." Based on the evidence presented at trial, the trial court determined that this "new business entity" was Imagery.

Under the PMA, Husband agreed that "[i]n consideration of [Wife's] agreement to relinquish any and all interest in" Imagery, "all oil and gas leases acquired through his efforts after the date of marriage [would] be acquired in the name of [Imagery]"; "all drilling operations" under these leases would "occur through" Imagery; and "all oil royalties, working interests, overriding oil interests, and mineral deeds as to oil, gas, and other minerals arising from" these leases would "be through" Imagery. Husband also agreed that if the couple divorced, Wife would receive, among other things, "one[]half (50%) of all cash or cash equivalents" in any of Imagery's accounts "net of all liabilities," including the working capital loans from ML Resources, and "a one-half depreciated cash value payment for any undeveloped oil and gas leases that [Imagery] may own which [had] not been developed into drilling prospects . . . after all other liabilities of [Imagery] have first been deducted." The PMA further provided that all "salaries payable to [Husband] generated solely from [Imagery]" would be jointly owned by Husband and Wife and would be placed in a jointly managed account in which each party would have a fifty-percent undivided interest.

In her divorce petition, Wife sought declaratory relief confirming her aforementioned rights under the PMA. In addition, she sought a declaration that "the loans allegedly owed by [Imagery] to [ML Resources and Husband] are barred by . . .

5

limitations and are there[fore] unenforceable against [Imagery]." Husband and Wife both called forensic certified public accountants (CPAs) as experts to testify regarding the enforceability of these loans and whether they should be considered liabilities of Imagery for purposes of calculating the amounts to which Wife was entitled under the PMA.

The evidence presented at trial showed that according to the most recent available data, Imagery had $206,869.17 in its bank account and the cash value of its undeveloped oil and gas leases was $251,996.06.[4] Husband's forensic CPA expert, Robert Bailes, testified that the outstanding balance of the loans that ML Resources and Husband had made to Imagery was $1,121,631.00. But on cross-examination, Bailes acknowledged that (1) the loans had matured no later than December 10, 2016; (2) he had seen nothing to indicate that Imagery had ever made any payments of either principal or interest on these loans; and (3) to the extent the loans were unenforceable, "they would not be considered debts" for accounting purposes. Wife's forensic CPA expert Elizabeth Schrupp testified that the loans from ML Resources and Husband should be deemed uncollectable and removed from Imagery's balance sheet because they were nine to fourteen years old and because Imagery had never paid any interest on them and had not made any principal payments since 2008.

---

[4]Imagery's October 31, 2022 bank statement was the most recent bank statement admitted at trial. And the most recent available financial statement reflecting the value of Imagery's oil and gas leases was dated September 30, 2022.

Husband argued that because Imagery's loan debt to himself and ML Resources exceeded the value of its assets and because the PMA provides that Imagery's liabilities must be deducted from the value of its "cash or cash equivalents" and its undeveloped oil and gas leases when calculating the amounts that Wife is entitled to receive for her one-half interests in these assets, Wife was not entitled to receive anything under the PMA based on these interests. But after considering the evidence outlined above, the trial court rejected Husband's argument and instead declared that Imagery's indebtedness to ML Resources and Husband is "barred by . . . limitations and [is] therefore unenforceable." Based on this declaration, the trial court disregarded these loans for purposes of calculating the amounts to which Wife was entitled under the PMA and ordered Husband to pay her $103,434.59 for her one-half interest in Imagery's "cash or cash equivalents" and $125,998.03 based upon the value of Imagery's undeveloped oil and gas leases.

## 2. Standard of Review

We review declaratory judgments under the same standards as other judgments and decrees and look to the procedure used to resolve the issue at trial to determine the appropriate appellate standard of review. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.010; *Remigio v. Armenta*, No. 02-21-00298-CV, 2022 WL 2526943, at *2 (Tex. App.—Fort Worth July 7, 2022, no pet.) (mem. op.); *City of Galveston v. Giles*, 902 S.W.2d 167, 170 (Tex. App.—Houston [1st Dist.] 1995, no writ). Here, the trial court decided Wife's requests for declaratory relief after a bench trial; thus, we apply a

7

sufficiency-of-the-evidence review to the trial court's factual findings and review its conclusions of law de novo. *See Wright v. Jones*, 674 S.W.3d 704, 709–10 (Tex. App.— Waco 2023, no pet.) (citing *Montfort v. Trek Res., Inc.*, 198 S.W.3d 344, 354 (Tex. App.—Eastland 2006, no pet.)). The construction of an unambiguous contract is a question of law that we review de novo. *See URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018).

### 3. Analysis

On the record before us, we cannot conclude that the trial court erred by (1) declaring that Imagery's loan obligations to ML Resources and Husband are unenforceable because they are barred by limitations and (2) disregarding these debts when calculating the amounts to which Wife was entitled under the PMA. Husband's own forensic CPA expert conceded that "the latest maturity date of the latest loan" from ML Resources or Husband to Imagery was December 10, 2016. Thus, the trial court properly determined that any suit by ML Resources or Husband to collect these loan debts from Imagery would be barred by limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(3); *Santos v. Yellowfin Loan Servicing Corp.*, No. 14-21-00151-CV, 2022 WL 2678846, at *6 (Tex. App.—Houston [14th Dist.] July 12, 2022, pet. denied) (mem. op.) ("The statute of limitations on a suit for debt is four years after the cause of action accrues."); *see also Famous Koko, Inc. v. Member 1300 Oak, LLC*, No. 05-17-00906-CV, 2018 WL 6065256, at *3 (Tex. App.—Dallas Nov. 20, 2018, no pet.) (mem. op.) (explaining that "a cause of action for breach of a promissory note"

8

generally accrues when the note matures, "either according to its terms or by acceleration of the maturity date" (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001))). Because Imagery's loan obligations to ML Resources and Husband are legally unenforceable and because both Husband's and Wife's forensic CPA experts testified that the loans should not be considered debts of Imagery if they are unenforceable, the trial court did not err by disregarding the loans for purposes of calculating the amounts to which Wife was entitled under the PMA.

Husband argues that Wife did not have standing to seek a declaration that Imagery's indebtedness to ML Resources and Husband was barred by limitations because she was not an obligor on the loans. But the Uniform Declaratory Judgments Act provides that

> [a] person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the instrument . . . [or] contract . . . and obtain a declaration of rights, status, or other legal relations thereunder.

Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a). And the Texas Supreme Court has explained that a court may grant declaratory relief "if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)).

9

Here, a justiciable controversy existed regarding the amounts to which Wife was entitled to receive under the PMA, and the resolution of this controversy turned on the validity of Imagery's loan obligations to ML Resources and Husband. Thus, the loans' validity was a matter of legitimate concern to Wife. Given this legitimate concern and the requested declaration's ability to resolve a justiciable controversy regarding Wife's entitlements under the PMA, we reject Husband's argument that she lacked standing. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a); *Bonham State Bank*, 907 S.W.2d at 467; *cf. Nu-Way Energy Corp. v. Delp*, 205 S.W.3d 667, 684 (Tex. App.—Waco 2006, pet. denied) (holding that although a party ordered to pay attorney's fees directly to the prevailing party's attorney generally does not have standing to challenge the manner in which the fees are paid, appellant had standing to challenge the manner of payment in this particular case because it was a judgment creditor of appellee and thus "the manner in which the attorney's fee award [was] handled [was] a matter of legitimate concern to [appellant]").

Husband also argues that the trial court erred by declaring that Imagery's indebtedness to ML Resources and Husband was unenforceable because Imagery and ML Resources were necessary parties and Wife failed to join them in the case.[5] But

---

[5]Husband also asserts that Wife waived the defense of limitations by failing to plead it as required by Rule 94. *See* Tex. R. Civ. P. 94. But this defense belongs to Imagery, not to Wife, and Husband has cited no authority to support his questionable contention that Wife could somehow waive this defense on Imagery's behalf. *See* Tex. R. App. P. 38.1(i); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.) ("Failure to cite applicable authority or provide substantive analysis waives an

Husband forfeited any complaint about Wife's purported failure to join necessary parties by failing to raise the issue in a verified pleading in the trial court. *See* Tex. R. Civ. P. 93(4); *Sheridan v. Williams*, No. 13-21-00342-CV, 2023 WL 2607740, at *6 (Tex. App.—Corpus Christi–Edinburg Mar. 23, 2023, no pet.) (mem. op.); *Allan v. Nationstar Mortg., LLC*, No. 14-18-00246-CV, 2019 WL 2939746, at *3 (Tex. App.—Houston [14th Dist.] July 9, 2019, pet. denied) (mem. op.). Accordingly, we conclude that this argument has not been adequately preserved for our review. *See Sheridan*, 2023 WL 2607740, at *6.

We overrule Husband's first issue.

## B. Breach of Fiduciary Duty

In his second issue, Husband contends that the trial court erred by finding that he had breached a fiduciary duty to Wife because no such fiduciary duty existed. We disagree.

---

issue on appeal."). The nature of a declaratory-judgment action is ex ante, *Mirant Peaker, LLC v. S. Md. Elec. Coop. (In re Mirant Corp.)*, Adv. No. 04-4073, 2005 WL 6443618, at *5 (Bankr. N.D. Tex. Nov. 22, 2005) (mem. op.) (citing *Venator Grp. Specialty, Inc. v. Matthew/Muniot Fam., LLC*, 322 F.3d 835, 839 (5th Cir. 2003)), and Wife, in effect, sought a declaration that because Imagery could assert a valid limitations defense if ML Resources and Husband ever filed suit to collect the loan debt that Imagery owed them, these loan obligations were unenforceable. While Rule 94 would require Imagery to plead its limitations defense in any such future debt-collection suit, we are unaware of any authority that would allow—much less require—Wife to plead this defense on Imagery's behalf in connection with her request for declaratory relief.

### 1. Applicable Law

To prevail on a breach-of-fiduciary-duty claim, a plaintiff must prove that (1) there is a fiduciary relationship between the plaintiff and defendant, (2) the defendant breached his fiduciary duty to the plaintiff, and (3) the breach resulted in an injury to the plaintiff or benefit to the defendant. *Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex. App.—Fort Worth 2011, no pet.) (quoting *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)).

There are two categories of fiduciary relationships: formal and informal. *See Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005). In formal relationships—such as those between partners, principals and agents, and attorneys and clients—fiduciary duties are owed as a matter of law. *Cardwell v. Gurley*, No. 05-09-01068-CV, 2018 WL 3454800, at *4 (Tex. App.—Dallas July 18, 2018, pet. denied) (mem. op.) (first citing *Meyer*, 167 S.W.3d at 330; and then citing *McAfee, Inc. v. Agilysis, Inc.*, 316 S.W.3d 820, 829 (Tex. App.—Dallas 2010, no pet.)). A fiduciary duty may also arise from an informal "moral, social, domestic, or purely personal relationship of trust and confidence, generally called a confidential relationship." *Lindley*, 349 S.W.3d at 124–25. Because of the intimate and confidential nature of the marriage relationship, spouses generally owe a fiduciary duty to each other. *See Hubbard v. Shankle,* 138 S.W.3d 474, 483 (Tex. App.—Fort Worth 2004, pet. denied); *see also Boaz v. Boaz,* 221 S.W.3d 126, 133 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (first citing *Vickery v. Vickery*, 999 S.W.2d 342, 357 (Tex. 1999) (Hecht, J., dissenting); and then

12

citing *Matthews v. Matthews*, 725 S.W.2d 275, 279 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (op. on reh'g)); *In re Marriage of Moore*, 890 S.W.2d 821, 827 (Tex. App.—Amarillo 1994, no writ); *Bohn v. Bohn*, 455 S.W.2d 401, 406 (Tex. App.—Houston [1st Dist.] 1970, writ dism'd).

**2. Analysis**

Husband argues that he did not owe Wife a fiduciary duty because the PMA provided that no community estate would be created during the couple's marriage. But while "[a] fiduciary duty exists between spouses regarding the community property each controls," *Wright v. Wright*, 280 S.W.3d 901, 907 (Tex. App.—Eastland 2009, no pet.), that is only one aspect of the general fiduciary duty that one spouse owes another. Beyond appropriately managing, preserving, and disposing of community property, the fiduciary duty between spouses generally requires the "utmost good faith and frankness in their dealings with each other." *Moore*, 890 S.W.2d at 830. Indeed, "courts have imposed the same duties of good faith and fair dealing on spouses as required of partners and other fiduciaries." *Daniel v. Daniel*, 779 S.W.2d 110, 115 (Tex. App.—Houston [1st Dist.] 1989, no writ). Thus, even though no community estate was created during the parties' marriage, Husband nevertheless owed Wife a fiduciary duty of good faith and fair dealing.[6] And it was

---

[6]Husband cites *Izzo v. Izzo*, No. 03-09-00395-CV, 2010 WL 1930179, at *7 (Tex. App.—Austin May 14, 2010, pet. denied) (mem. op.), and *Marsh v. Marsh*, 949 S.W.2d 734, 739 n.4 (Tex. App.—Houston [14th Dist.] 1997, no writ), for the proposition that a fiduciary duty exists between spouses who enter into a postmarital

13

this aspect of his fiduciary duty that the trial court found that Husband had breached by, inter alia, "redirect[ing] sums from [Imagery] to other endeavors that were neither fair nor equitable to [Wife]," "fail[ing] to act with the utmost faith and scrupulous honesty toward [her]," and "fail[ing] to fully and fairly disclose all important information to [her]" regarding his business transactions.

We overrule Husband's second issue.

## C. Breach of the PMA: Husband

In his third issue, Husband contends that the trial court erred by concluding that he had breached the PMA by failing to deposit all "salaries payable to [Husband] generated solely from [Imagery]" into a jointly managed account and by "redirecting funds belonging to [Imagery] for purposes other than to pay reasonable expenses of [Imagery] and salaries to [Husband]." And, relatedly, in his seventh issue, Husband contends that the trial court erred by defining "salaries payable to [Husband]

---

agreement, but not between prospective spouses who enter into a premarital agreement. But these cases merely address the fiduciary duty—or lack thereof—that the parties to a premarital or postmarital agreement owe each other with respect to the negotiation and execution of the agreement itself, not whether spouses who have entered into a premarital agreement owe each other a fiduciary duty once they are married. *See Izzo*, 2010 WL 1930179, at *7; *Marsh*, 949 S.W.2d at 739 n.4. Unremarkably, these cases recognize that a postmarital agreement may be more susceptible than a premarital agreement to charges that it is unenforceable on grounds of involuntariness or unconscionability because unlike the parties to a premarital agreement, the parties to a postmarital agreement are, by definition, already married and therefore owe each other a fiduciary duty. *See Izzo*, 2010 WL 1930179, at *7; *Marsh*, 949 S.W.2d at 739 n.4. Thus, far from supporting Husband's contention that he did not owe Wife a fiduciary duty, these cases actually undermine it by their recognition of the general fiduciary duty between spouses.

14

generated solely from [Imagery]" to mean "all sums available for payment of salaries" from Imagery to Husband. We disagree on both points.

### 1. Applicable Law

"The essential elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained as a result of the breach." *Berdin v. Allstate Ins. Co.*, No. 02-22-00426-CV, 2023 WL 7037619, at *6 (Tex. App.—Fort Worth Oct. 26, 2023, no pet.) (mem. op.) (citing *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 739 (Tex. App.—Fort Worth 2008, pet. dism'd)). Whether a party's conduct constitutes a breach of contract is a legal question that we review de novo. *Silver Lion, Inc. v. Dolphin St., Inc.*, No. 01-07-00370-CV, 2010 WL 2025749, at *12 (Tex. App.—Houston [1st Dist.] May 20, 2010, pet. denied) (mem. op. on reh'g) (citing *E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 123 (Tex. App.—El Paso 2007, no pet.) (op. on reh'g)). "A fact question exists on the issue of breach only to the extent that there is a dispute as to whether a party performed." *E.P. Towne Ctr. Partners, L.P.*, 242 S.W.3d at 123–24.

Our primary concern in interpreting a contract is to ascertain and give effect to the intent of the parties as it is expressed in the contract. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). To achieve this objective, "courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."

15

*Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). Generally, we "give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). An unambiguous contract is construed according to the plain meaning of its express wording. *Dorsett*, 164 S.W.3d at 662. We may not rewrite a contract or add to its language under the guise of interpreting it. *Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 889 (Tex. 2021); *see Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016).

### 2. Relevant Background

As noted, under Paragraph 7.6 of the PMA all "salaries payable to [Husband] generated solely from [Imagery]" were jointly owned by Husband and Wife and were to be placed in a jointly managed account in which each party would have a fifty-percent undivided interest. In her divorce petition, Wife asked the trial court to declare, inter alia, that for purposes of the PMA the term "salaries payable to [Husband] generated solely from [Imagery]" means "all sums available for payment of salaries" to Husband from Imagery, that all such sums are jointly owned by Husband and Wife, and that Husband had breached the PMA by failing to deposit all such sums into a jointly managed account as required by Paragraph 7.6 of the PMA and by redirecting these funds for other purposes.

At trial, Wife presented evidence that Imagery is a pass-through entity, meaning that Imagery's net income is treated as Husband's income for tax purposes, and that

16

Husband can unilaterally decide what his salary will be. She also presented evidence that from 2020 to 2022, Imagery generated $167,002.00 from which salaries could have been—but were not—paid to Husband; that Husband had redirected $24,883.31 from Imagery to Mark My Words Sports Group, another entity owned by Husband; and that Husband had not paid any of his "salary payable" from Imagery to Wife since the couple separated in July 2021. Based on this evidence, the trial court granted Wife's aforementioned requests for declaratory relief and found that she had incurred $95,946.57 in damages as a result of Husband's breach of the PMA.

### 3. Definition of "Salaries Payable to [Husband] Generated Solely From [Imagery]"

Husband asserts that the trial court erred by declaring that the term "salaries payable to [Husband] generated solely from [Imagery]" as used in Paragraph 7.6 of the PMA means "all sums available for payment of salaries" to Husband from Imagery. According to Husband, because Paragraphs 7.5 and 7.6 of the PMA do not place any parameters on the amount of his salary and because Paragraph 3.8 grants him "the full, free, and unrestricted right to manage the separate property over which he . . . has control"—including Imagery—the trial court's definition, in effect, "read[s] into the agreement requirements that do not exist." We disagree.

By defining the term "salaries payable to [Husband] generated solely from [Imagery]," the trial court did not place any extra-contractual requirements on how much salary Imagery must actually pay him. Rather, by defining the term as it did, the

17

trial court simply ensured that all of Imagery's net income—regardless of how much was actually paid to Husband as salary—would be treated as "salaries payable" to Husband for purposes of Paragraph 7.6 of the PMA.

Further, the trial court's definition is consistent with both the generally accepted meaning of the word "payable" and the evidence presented at trial regarding Husband's ownership and management of Imagery. Webster's Dictionary defines "payable" as an adjective meaning "that *may*, *can*, or must be paid." *Payable*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/payable (last visited July 7, 2025) (emphasis added); *see also In re Davenport*, 522 S.W.3d 452, 456–57 (Tex. 2017) (orig. proceeding) (noting that contract terms are typically given their plain and ordinary meaning and that courts look to dictionaries to discern meaning of commonly used terms that the contract does not define). Because Imagery is a pass-through entity wholly owned by Husband and because Husband can unilaterally decide what his salary will be, all of Imagery's net income could theoretically be paid to Husband as salary. In other words, regardless of whether Husband actually receives a salary, "all sums available for payment of salaries" to Husband from Imagery *may* (or *can*) be paid to him as salary and are thus "payable" as salary under the term's generally accepted meaning.

In light of the foregoing, we conclude that the trial court did not err by defining the term "salaries payable to [Husband] generated solely from [Imagery]" to mean "all sums available for payment of salaries" to Husband from Imagery.

18

### 4. Husband's Breach of the PMA

Having determined that the trial court did not err by defining the term "salaries payable to [Husband] generated solely from [Imagery]" as it did, we likewise conclude that the trial court did not err by finding that Husband had breached the PMA. On appeal, Husband does not challenge the trial court's declarations that all "salaries payable to [Husband] generated solely from [Imagery]" are jointly owned by Husband and Wife, that Husband failed to deposit all such sums into a jointly managed account as required by Paragraph 7.6 of the PMA, and that he redirected a portion of these funds to Mark My Words Sports Group. Rather, he contends that because the PMA (1) provides that he has "the full, free, and unrestricted right to manage the separate property over which he . . . has control"—including Imagery—and (2) contemplates that he might create "subsequent new business entities" after the creation of Imagery, his conduct did not violate the PMA. But the trial court's unchallenged declarations reflect that Husband failed to place all "salaries payable to [Husband] generated solely from [Imagery]"—i.e., "all sums available for payment of salaries" to Husband from Imagery—into a jointly managed account as required by Paragraph 7.6 of the PMA. As the most specific provision regarding the handling of these funds, Paragraph 7.6 controls over the other, more general provisions upon which Husband relies. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019) ("[A] specific contract provision controls over a general one." (quoting *Forbau v. Aetna*

19

*Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994) (op. on reh'g))). Thus, the trial court did not err by concluding that Husband had breached the PMA.

We overrule Husband's third and seventh issues.

## D. Breach of the PMA: Wife

In his fourth issue, Husband contends that the trial court erred by failing to conclude that Wife had breached the PMA by depositing jointly owned funds into a separate bank account in her name. We disagree.

At trial, Wife acknowledged that she had deposited certain of Husband's salary checks into a separate account in her name at First Bank. But she explained that she had done so because, unlike the bank where the couple had their joint deposit account, First Bank allowed her to "mobile deposit" the checks, and this prevented her from having to make frequent trips from Frisco to Dallas to make deposits. She testified that she would "immediately transfer" the funds to the couple's joint account and that Husband was fully aware of how she was handling the deposits.

On this record, we cannot conclude that a material breach occurred. *See* 17A Am. Jur. 2d *Contracts* § 544 (2025) ("There is no material breach of contract where a party substantially performs; 'substantial performance' is performance which, despite a deviation from contract requirements, provides the important and essential benefits of the contract to the promisee."). Thus, the trial court did not err by failing to conclude that Wife had breached the PMA.

We overrule Husband's fourth issue.

**E. Characterization of Gold and Silver as Husband's Separate Property**

In his sixth issue,[7] Husband contends that the trial court abused its discretion by characterizing certain gold and silver purportedly owned by ML Resources as Husband's separate property. We disagree.

We review a trial court's division of property under an abuse-of-discretion standard. *See, e.g.*, *Loaiza v. Loaiza*, 130 S.W.3d 894, 899 (Tex. App.—Fort Worth 2004, no pet.) (citing *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981)). "[U]nless the corporation is a spouse's alter ego, a court may only award a spouse's interest in the corporation, not specific corporate property." *Siefkas v. Siefkas*, 902 S.W.2d 72, 79 (Tex. App.—El Paso 1995, no writ) (first citing *Vallone v. Vallone*, 644 S.W.2d 455, 458 (Tex. 1982); and then citing *Thomas v. Thomas*, 738 S.W.2d 342, 343 (Tex. App.— Houston [1st Dist.] 1987, writ denied)). Thus, a trial court abuses its discretion to the extent that it awards a spouse specific corporate property. *See id.* However, "[w]hen facts are disputed, a trial court does not abuse its discretion if some of the conflicting evidence supports its decision." *Bowman v. Stephens*, 569 S.W.3d 210, 223 (Tex. App.— Houston [1st Dist.] 2018, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005)).

Husband asserts that the trial court abused its discretion by characterizing certain gold and silver as his separate property instead of ML Resources' corporate property because he presented evidence purportedly showing that ML Resources had

[7]*See supra* note 1.

purchased the gold and silver. But Husband's own Inventory and Appraisement—which was admitted into evidence and which Husband confirmed was an accurate reflection of his assets—listed the gold and silver as his separate property. Given this conflicting evidence, we cannot say that the trial court abused its discretion by characterizing the gold and silver as Husband's separate property.[8] *See Bowman*, 569 S.W.3d at 223.

We overrule Husband's sixth issue.

## F. Child Support

In his eighth issue, Husband contends that the trial court abused its discretion by ordering him to pay Wife $2,300.00 per month in child support. Specifically, he asserts that the evidence was insufficient to support the trial court's finding that he had net resources of $9,200.00 per month and that the trial court abused its discretion by using this unsupported finding to calculate the amount of his child-support obligation. We disagree.

### 1. Standard of Review

We review a trial court's judgment granting child support for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *B.K. v. T.K.*, No.

---

[8]Because ML Resources is wholly owned by Husband, it does not appear that Husband suffered any harm as a result of the trial court's characterization even if it did constitute an abuse of discretion. *See, e.g., Owings v. Kelly*, No. 07-20-00115-CV, 2020 WL 6588610, at *3 (Tex. App.—Amarillo Nov. 10, 2020, no pet.) (mem. op.) ("[B]efore the error is reversible, the [appellants] must show how it harmed them."); *see also* Tex. R. App. P. 44.1(a).

02-19-00472-CV, 2021 WL 2149621, at *2 (Tex. App.—Fort Worth May 27, 2021, no pet.) (mem. op.). A trial court abuses its discretion when it acts arbitrarily or without reference to guiding principles or when it fails to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *B.K.*, 2021 WL 2149621, at *2. Although sufficiency of the evidence is not an independent ground of error under the abuse-of-discretion standard, it is a factor in assessing whether the trial court abused its discretion. *In re A.L.S.*, 338 S.W.3d 59, 65 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *London v. London*, 94 S.W.3d 139, 143–44 (Tex. App.—Houston [14th Dist.] 2002, no pet.). When, as here, the trial court issues findings of fact and conclusions of law, its findings have the same force and dignity as the findings made in a jury verdict, and we apply the same sufficiency standards as if reviewing evidence supporting a jury's answer. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). In applying these sufficiency standards, we bear in mind that "[i]n a bench trial, the trial court is the sole judge of the credibility of the witnesses, assigns the weight to be given their testimony, may accept or reject all or any part of their testimony, and resolves any conflicts or inconsistencies in the testimony." *Abunijmeh v. Hurtado*, No. 05-22-01377-CV, 2024 WL 396620, at *1 (Tex. App.—Dallas Feb. 2, 2024, no pet.) (mem. op.) (citing *LaCroix v. Simpson*, 148 S.W.3d 731, 734 (Tex. App.—Dallas 2004, no pet.)).

**2. Statutory Child-Support Guidelines**

When calculating the amount of child support presumed to be reasonable under Texas law, the obligor's gross and net resources are key variables. *See* Tex. Fam. Code Ann. §§ 154.062, .125, .131. By statute, "child support is generally determined by calculating the child[-]support obligor's monthly net resources and applying statutory guidelines to that amount." *Gonzalez v. Gonzalez*, 331 S.W.3d 864, 868 (Tex. App.—Dallas 2011, no pet.). The statutory guidelines provide, for example, that an obligor with two children will pay either twenty percent or twenty-five percent of his net resources, depending on whether those net resources are above a certain threshold. Tex. Fam. Code Ann. § 154.125(b), (c); *see Stringfellow v. Stringfellow*, 538 S.W.3d 116, 118 (Tex. App.—El Paso 2017, no pet.). However, "when a child-support obligor's monthly net resources exceed a 'maximum amount of net resources to which the statutory guidelines are applicable,' which is currently set at $9,200[.00], a trial court 'shall presumptively apply the percentage guidelines to the portion of the obligor's net resources that does not exceed that amount.'" *In re Howley*, No. 03-21-00318-CV, 2021 WL 5750190, at *3 (Tex. App.—Austin Dec. 3, 2021, orig. proceeding) (mem. op.) (quoting Tex. Fam. Code Ann. § 154.126(a)). Thus, $9,200.00 is the current maximum amount of monthly net resources to which the statutory guidelines may be applied. *See* Tex. Fam. Code Ann. § 154.126(a); *In re B.R.M.*, No. 09-21-00397-CV, 2023 WL 2530260, at *3 (Tex. App.—Beaumont Mar. 16, 2023, no pet.) (mem. op.).

24

### 3. Evidence of Husband's Monthly Net Resources

Here, the trial court found that Husband's monthly net resources were $9,200.00 and then used this figure to calculate his monthly child-support obligation of $2,300.00 in accordance with the statutory guidelines. *See* Tex. Fam. Code Ann. § 154.125(b). Husband asserts that there is insufficient evidence to support the trial court's monthly-net-resources finding, but our review of the record shows otherwise.

In September 2021, the trial court signed temporary orders that, among other things, required Husband to pay Wife $2,300.00 per month in child support. At trial, the trial court took judicial notice of these temporary orders, and both Husband and Wife testified that Husband's income had not materially changed since the temporary orders were signed. The evidence at trial also showed that Husband recently caused ML Resources to purchase a new truck for his use, that his two-bedroom apartment in Frisco is paid for by Imagery, and that he has many income-producing properties. Although Husband presented evidence purporting to show that his income had ranged from $19,000 to $40,000 per year during the "seven or eight years" before trial, the trial court determined that this evidence was not credible.[9] Thus, as factfinder, the trial court was free to reject this evidence or to give it little weight. *See Abunijmeh*, 2024 WL 396620, at *1.

---

[9]The trial court also found that Husband "failed and refused to provide any current earnings information, bank account documentation[,] or substantiation of income." Based on our review of the record, we conclude that it contains sufficient evidence to support this finding.

Because there are facts in the record to support the trial court's monthly-net-resources finding—including Husband's own testimony that his income had not substantially changed since the temporary orders were entered—and because the trial court was free to reject or give little weight to Husband's evidence purportedly showing that he had a lower income, we cannot conclude that the trial court abused its discretion by finding that Husband had monthly net resources of $9,200.00 per month and requiring him to continue making child-support payments of $2,300.00 per month. *See Reyes v. Gonzales*, 22 S.W.3d 516, 518 (Tex. App.—El Paso 2000, pet. denied) (op. on reh'g) ("In determining whether the trial court abused its discretion in setting a child support order, we will affirm so long as there is some evidence of a substantive and probative character to support the trial court's decision." (first citing *Thomas v. Thomas*, 895 S.W.2d 895, 896 (Tex. App.—Waco 1995, writ denied) (op. on reh'g); and then citing *Wilemon v. Wilemon*, 930 S.W.2d 290, 294 (Tex. App.—Waco 1996, no writ))).

We overrule Husband's eighth issue.

## G. Healthcare Reimbursement: Explanation of Benefits

In his ninth issue, Husband contends that the trial court abused its discretion by declining to require Wife to provide him an explanation of benefits showing the uninsured portion of any healthcare expenses for the couple's children before he was required to pay his fifty-percent share of such expenses. We disagree.

26

Under the temporary orders entered in September 2021, the spouse incurring a healthcare expense on behalf of one of the couple's children was required to provide the nonincurring spouse "all forms, receipts, bills, statements, *and* explanations of benefits reflecting the uninsured portion of the health[]care expenses" within thirty days after receiving them. [Emphasis added.] However, in the final divorce decree, the trial court modified this language to require the incurring spouse to provide "all forms, receipts, bills, statements, *or* explanations of benefits reflecting the uninsured portion of the health[]care expenses." [Emphasis added.]

At trial, Wife testified that Husband had repeatedly refused to pay his share of the children's uninsured medical expenses until an explanation of benefits was provided even if she had provided other documentation of the expenses and that at the time of trial, he still owed her $656.07 for the reimbursement of these healthcare expenses. Because the record contains evidence showing that Husband had a pattern of forcing Wife to jump through hoops before he would pay his share of the children's uninsured medical expenses[10] and because the payment of these medical

---

[10]Husband claims that Wife admitted that she "had engaged in a scheme of requesting reimbursement from Husband of [fifty percent] of out-of-pocket expenses that were later covered by insurance," thereby causing Husband to pay more than his court-ordered share of such expenses. But Husband did not provide any citations to the record to support this assertion. *See* Tex. R. App. P. 38.1(i). Further, even if Wife had admitted to such a "scheme," given the evidence of Husband's lack of cooperation with regard to the payment of his share of the children's uninsured medical expenses, we would nevertheless conclude that the trial court acted within its discretion by declining to require Wife to provide explanations of benefits to Husband. *See Reyes*, 22 S.W.3d at 518.

27

expenses is obviously in the children's best interest—which is the court's paramount concern in a SAPCR, *In re P.J.*, No. 02-13-00052-CV, 2013 WL 6727879, at *4 (Tex. App.—Fort Worth Dec. 19, 2013, no pet.) (mem. op.) (first citing *Aguilar v. Barker*, 699 S.W.2d 915, 917 (Tex. App.—Houston [1st Dist.] 1985, no writ); and then citing *Boriack v. Boriack*, 541 S.W.2d 237, 242 (Tex. App.—Corpus Christi 1976, writ dism'd)); *Rojas v. Scharnberg*, No. 01-09-01039-CV, 2011 WL 941616, at *6 (Tex. App.—Houston [1st Dist.] Mar. 17, 2011, no pet.) (mem. op.)—we cannot say that the trial court abused its discretion by declining to require Wife to provide Husband an explanation of benefits to document his share of any uninsured healthcare expenses for the couple's children.

We overrule Husband's ninth issue.

## H. Wife's Attorney's Fees

In his tenth issue, Husband contends that the trial court abused its discretion by awarding Wife attorney's fees. We disagree.

### 1. Standard of Review

We review a trial court's decision to award attorney's fees for an abuse of discretion. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990). If attorney's fees are proper under the law, the trial court does not have discretion to deny them. *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 683 (Tex. App.—Fort Worth 1998, pet. denied); *accord Mercier v. Sw. Bell Yellow Pages, Inc.*, 214 S.W.3d 770, 775 (Tex. App.—Corpus Christi–Edinburg 2007, no pet.) (op. on reh'g).

28

We review the amount of attorney's fees awarded under a legal-sufficiency standard. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489–90 (Tex. 2019); *Enterprising Gals of Tex., L.L.C. v. Sprehe*, No. 02-17-00063-CV, 2018 WL 3580998, at *2 (Tex. App.—Fort Worth July 26, 2018, no pet.) (mem. op.). We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017); *see also Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998) (op. on reh'g). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller*, 168 S.W.3d at 807, 827.

### 2. Analysis

The final divorce decree contains two awards of attorney's fees: (1) an award of $66,804.71 to Wife for attorney's fees incurred in connection with her breach-of-contract claim against Husband and (2) an award of $46,466.04 directly to Wife's

counsel pursuant to Family Code Section 106.002 for attorney's fees incurred in connection with the SAPCR. *See* Tex. Fam. Code Ann. § 106.002(a). Husband challenges both of these awards, and we will consider the propriety of each in turn.[11]

### a. Wife's Breach-of-Contract Attorney's Fees

Husband argues that the trial court abused its discretion by awarding Wife attorney's fees in connection with her breach-of-contract claim because (1) Husband did not breach the PMA and (2) Wife did not successfully challenge the PMA's validity. Having already determined that the trial court did not err by concluding that Husband had breached the PMA,[12] we reject his first argument. And Husband's second argument is equally unavailing.

Husband's second argument is based on the second sentence of Paragraph 17.9 of the PMA, which provides as follows: "If either party files a declaratory judgment proceeding to determine the enforceability of this agreement, neither party will be entitled to an award of attorney's fees unless a party successfully challenges the validity of this agreement . . . ." But Wife did not challenge the PMA's enforceability; rather, by seeking damages from Husband for breaching the PMA, she effectively sought to enforce it. And Paragraph 17.9's first sentence—which Husband

---

[11]Husband also argues that Wife was not entitled to recover any attorney's fees based on her breach-of-fiduciary-duty claim. However, it does not appear that the trial court awarded Wife any attorney's fees in connection with this claim. Accordingly, we need not—and therefore do not—address this argument. *See* Tex. R. App. P. 47.1.

[12]*See supra* Section II.C.

conveniently ignores—provides that if a party "brings an action or other proceeding to enforce this agreement . . . , the prevailing party will be entitled to recover reasonable attorney's fees and other necessary costs from the other party." Because Wife's breach-of-contract claim constituted an action to enforce the PMA and because she prevailed on this claim, the trial court did not abuse its discretion by awarding Wife the attorney's fees that she incurred in connection with the claim's prosecution.

### b. Wife's SAPCR Attorney's Fees

Husband argues that the trial court erred by awarding attorney's fees incurred in connection with the SAPCR directly to Wife's counsel pursuant to Family Code Section 106.002 because Paragraph 9.9 of the PMA provides that "[e]ach party . . . agrees to pay his or her own attorney's fees, costs, and other expenses on final hearing of any dissolution proceeding." According to Husband, because the SAPCR was part of the parties' divorce case, the PMA bars the award of attorney's fees incurred in connection with the SAPCR.

But this argument ignores the SAPCR suit's distinct nature as well as Paragraph 18.19 of the PMA. Although a petition in a suit for the dissolution of a marriage involving parties who are the parents of a child must include a SAPCR, a divorce suit and a SAPCR are nevertheless separate and distinct suits. *Coleman v. Coleman*, No. 02-21-00368-CV, 2022 WL 7232156, at *2 (Tex. App.—Fort Worth Oct. 13, 2022, no pet.) (mem. op.) (citing *In re Marriage of Morales*, 968 S.W.2d 508, 511 (Tex. App.—

31

Corpus Christi 1998, no pet.)); *accord In re M.C.M.*, Nos. 05-21-00242-CV & 05-21-00373-CV, 2023 WL 4117080, at \*4 (Tex. App.—Dallas June 22, 2023, no pet.) (mem. op.). Further, Paragraph 18.19 of the PMA expressly provides that "[n]othing in this agreement affects either party's rights in any [SAPCR]." Thus, contrary to Husband's argument, the PMA does not bar the award of attorney's fees incurred in connection with the SAPCR. Accordingly, the trial court did not abuse its discretion by awarding SAPCR-related attorney's fees directly to Wife's counsel under Family Code Section 106.002. *See* Tex. Fam. Code Ann. § 106.002(a).

Husband also argues that even if the award of SAPCR-related attorney's fees was proper, the amount of fees awarded was incorrect because the $46,466.04 figure includes $20,262.20 in fees that Wife incurred in responding to a mandamus petition filed by Husband earlier in the divorce case. But because the mandamus proceeding involved a challenge to an award of interim attorney's fees to Wife "for the safety and welfare of the child[ren]" pursuant to Family Code Section 105.001,[13] it was part of the SAPCR. *See* Tex. Fam. Code Ann. § 105.001(a)(5); *see also In re O'Connor*, No. 03-21-00159-CV, 2021 WL 3868758, at \*2 (Tex. App.—Austin Aug. 31, 2021, orig. proceeding) (mem. op.) ("Section 105.001(a)(5) of the Family Code provides that *in a SAPCR*, the trial court may make a temporary order 'for the safety and welfare of the child, including an order . . . for payment of reasonable attorney's fees and expenses.'"

---

[13]*See generally In re D.M.L.*, No. 02-22-00451-CV, 2022 WL 17841837 (Tex. App.—Fort Worth Dec. 22, 2022, orig. proceeding) (mem. op.).

(emphasis added)). Therefore, the trial court did not err by including the mandamus-related fees in the award.

### c. Disposition of Husband's Tenth Issue

Having determined that the trial court did not abuse its discretion by awarding Wife attorney's fees in connection with her breach-of-contract claim or by awarding Wife's counsel attorney's fees under Family Code Section 106.002, we overrule Husband's tenth issue.

## I. Husband's Attorney's Fees

In his eleventh issue, Husband contends that the trial court abused its discretion by failing to award him attorney's fees. But this contention is premised on his argument that Wife breached the PMA.[14] Having already rejected this antecedent argument in our analysis of Husband's fourth issue, we likewise reject Husband's contention that he is entitled to attorney's fees.

We overrule Husband's eleventh issue.

---

[14]Husband alternatively argues that he is entitled to recover attorney's fees under Paragraph 17.9 of the PMA because Wife purportedly sought "to recover property in a manner at variance with the PMA." But he bases this assertion solely on Wife's request for a declaratory judgment that Imagery's loan debts to ML Resources and Husband should be disregarded in calculating the amounts to which Wife was entitled under the PMA. *See supra* Section II.A. By seeking such relief, Wife did not seek "to recover property in a manner at variance with the PMA." Rather, she merely sought a judicial determination regarding how her recovery under the PMA should be calculated. Moreover, we have concluded that the trial court did not err by granting this declaratory relief. *See id.* Thus, we reject Husband's alternative argument.

### III. CONCLUSION

Having overruled all of Husband's issues, we affirm the final divorce decree.[15]

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: July 24, 2025

---

[15]In a cross point, Wife contends that Husband is estopped from appealing the final divorce decree because he accepted its benefits and sought to enforce it. Having overruled all of Husband's appellate issues, we need not—and therefore do not—address Wife's cross point. *See* Tex. R. App. P. 47.1.